Affiliated Central, Inc., 130 F.3d 553, 559-60 (2d Cir. 1997). The burden then shifts back to the plaintiff to refute the defendant's proffered reason and show that it is really a pretext for discrimination. Id.; Nweke v. Prudential Ins. Co. of Amer., 25 F. Supp.2d 203, 225 (S.D.N.Y. 1998). Plaintiff cannot produce any such evidence in this case.

In fact, the evidence shows that from the time he was hired as a regular employee, the plaintiff demonstrated a clear unwillingness or inability to work cooperatively with members of his department and to follow directions of his superiors. Within weeks of being hired, plaintiff was informally counseled by his supervisor for his low inspection rate. Shortly thereafter, plaintiff was counseled at a meeting with Mr. Williams and Mr. Flynn regarding his inability to follow directions and his tendency to ask redundant questions of numerous people in his department. A few weeks later, his supervisor discovered that plaintiff falsified a document and gave him a written warning. Plaintiff never acknowledged his mistake or admitted that he would correct his behavior. In fact, plaintiff's customary response to any criticism was to deny any fault on his part and then to show contempt and hostility to anyone he considered an accuser.

Soon after the falsification incident and while he was still on probation for that incident, plaintiff then had an altercation with Ms. Freese, a long-term and well respected CooperSurgical employee. While plaintiff contests the specifics of the altercation, it is undisputed that Ms. Freese complained to CooperSurgical that plaintiff had harassed her by verbally attacking her in response to her mere request for assistance. The company set up a conflict resolution meeting, the purpose of which was to allow each employee to hear the other's point of view, to address their concerns, and hopefully to reach an understanding that would improve their interpersonal relationship. While Ms.

Freese cooperated with the conflict resolution meeting set up following the incident, plaintiff refused to constructively participate in the meeting and instead shouted at the participants and then accused his supervisor, Mr. Flynn, of lying. Such conduct, all occurring during plaintiff's short employment at CooperSurgical, form the legitimate basis for terminating plaintiff's employment. They have nothing whatsoever to do with plaintiff's race or color, which the decision makers clearly knew when they hired him from a temporary agency to a regular employee.

Thus, even if plaintiff were able to establish a prima facie case of discrimination -- which he cannot do on the record in this case -- summary judgment should still be granted because plaintiff cannot show that CooperSurgical's reasons for terminating his employment were pretextual and that the real reason was a discriminatory animus toward African-American employees.

In fact, plaintiff has failed to present any evidence during discovery in this case that would even suggest that his race played a role in CooperSurgical's management decisions. He testified during his deposition that no one at CooperSurgical ever made any comments or jokes regarding his race or national original. Young Dep. 258:24-259:16. He admitted that he had never heard anyone at CooperSurgical make any remarks, comments, or jokes regarding anyone's race or national origin. Young Depo. 257:19-259:17. Moreover, as discussed above, plaintiff cannot show that he was treated less favorably than any similarly situated person who is not African-American. See discussion, supra at 26-28.

Plaintiff may disagree with CooperSurgical's rationale for terminating his employment;[10]

---

[10] While plaintiff claims that CooperSurgical erroneously believed Ms. Freese's description of the altercation, he does not deny that Ms. Freese accused him of harassing her and he does not deny that he accused Mr. Flynn, his supervisor, of being untruthful during the conflict resolution process. See Young Depo. 276:9-17, 19-20.

31

however, such disagreement cannot support a discrimination claim. In other words, while plaintiff may not believe that the falsification of the report and the altercation with Ms. Freese were sufficient bases to terminate his employment, his personal belief cannot defeat summary judgment. Nor does such a belief lead to the conclusion that his supervisor terminated his employment because of his race. The law is clear that there is no requirement that the employer's proffered reason "be a good or rational reason, merely a non-discriminatory one." Wilds v. United States Postmaster General, 989 F.Supp. 178, 185 (D. Conn. 1997) (citing Graefenhain v. Pabst Brewing, 827 F.2d 13, 20 (7th Cir.1987) ("A business decision need not be good or even wise. It simply has to be nondiscriminatory . . .")). Thus, plaintiff's disagreement with CooperSurgical's decision to terminate him, in the absence of supporting evidence that the decision was based on race, cannot on its own create material issues of fact warranting a trial.

To defeat summary judgment, a plaintiff must provide "not simply some evidence but sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendant] were false and that more likely than not [race discrimination] was the real reason for the employment action." Wenstock v. Colombia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (quotations omitted); see also Ferrelli v. River Manor Health Care Center, 323 F. 3d 196, 205 (2d Cir. 2003).

> Mere unsupported speculation . . . is not enough to defeat a summary judgment motion. At bottom, [plaintiff] imputes to [the employer] a discriminatory motive, without factual support. Although courts must carefully consider summary judgment when intent is an issue, . . .[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Since [plaintiff] cannot point to any circumstance surrounding [his] discharge that credibly raises an inference of unlawful discrimination, [he] failed to make an adequate showing on an essential element of [his] case.

Ennis, 53 F.3d at 62 (citations omitted) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

Given that plaintiff is unable to offer any evidence that CooperSurgical's actions were based on plaintiff's race, the Court must grant summary judgment as to the First and Fourth Counts. See, e.g., Ricks v. Conde Nast Publications, Inc., 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) ("The mere fact that the employee disagrees with the employer's assessments of her work, however, cannot, standing on its own show that her employer's asserted reason for termination was pretextual."); Payne v. State of New York Power Authority, 997 F. Supp. 492, 498-99 (S.D.N.Y. 1998) ("Missing from [plaintiff's] dispute, however, is evidence – either direct or circumstantial – which points to the conclusion that Power Authority's explanation for demoting plaintiff are a pretext for race discrimination"); Ashton v. Pall Corp., 32 F.Supp. 2d 82, 91 (E.D.N.Y. 1999) ("Plaintiff relies upon optimistic expectation that at trial he will prove that Defendant created plaintiff's negative performance evaluations to justify his termination, which, he claims, is only a pretext for the real reason he was discharged – his age. Such blanket statements have no probative value."); Evans v. New York Botanical Garden, 253 F. Supp. 2d 650, 660 (S.D.N.Y. 2003) (plaintiff's own conclusory assertions plus the fact that plaintiff was replaced by a white employee who was promoted despite having less experience than plaintiff is insufficient to establish a genuine dispute of fact as to whether the [employer's] reason was pretextual.").

> **B.** **The Court Should Grant Summary Judgment as to the Second and Fifth Counts Because There Is No Evidence That CooperSurgical Retaliated Against Him for Engaging in Activity That is Protected Under Title VII or the CFEPA.**

Title VII prohibits an employer from retaliating against an employee who has either "opposed

33

any practice made an unlawful employment practice by the subchapter" or "participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The CFEPA provides, inter alia, that it is an unlawful discriminatory practice to "discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice . . . ." Conn. Gen. Stat. § 46a-60(a)(4).

In evaluating claims for retaliatory discrimination, courts employ the same three-stage, burden-shifting analysis as in discrimination cases: plaintiff must establish a prima facie case; the employer must then articulate a legitimate, nondiscriminatory reason for its action; and the employee must then prove that the employer's reasons are pretextual and that the actual reason was retaliatory. See Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 443 (2d Cir. 1999).

In this case, plaintiff cannot show that CooperSurgical's reasons for terminating his employment were pretextual or prove that the actual reason was retaliatory.

1. **There is No Evidence in This Case That CooperSurgical's Legitimate Non-Discriminatory Reasons for Terminating Plaintiff's Employment Are Pretextual.**

Even where a plaintiff in a retaliation case establishes a prima facie case of retaliation – which the plaintiff cannot do here for the same reasons as explained above in the discrimination argument at pp. 23-19, supra. – the plaintiff must "point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002) (emphasis added). "However, 'a reason cannot be proved to be a pretext for [retaliation] unless it is

34

shown both that the reason was false, and that [retaliation] was the real reason.'" Munck v. New Haven Savings Bank, 251 F. Supp. 2d 1078, 1088 (D. Conn. 2003) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

In showing pretext, a plaintiff in a race discrimination case must present evidence that the conduct about which he complains "was motivated by negative feelings vis-à-vis his racial identity." Bailey v. Colgate-Palmolive Co., 99 Civ. 3228, 2003 WL 21108325 at *19 (S.D.N.Y. May 14, 2003) (copy attached). As discussed above in connection with plaintiff's claims of discrimination, plaintiff cannot rebut CooperSurgical's legitimate, nondiscriminatory reason for his termination: insubordination and a demonstrated inability to interact cooperatively with his co-workers. As noted above, plaintiff may disagree with CooperSurgical's rationale for terminating his employment, and even for placing him on probation, but mere disagreement with an employer's actions is not a sufficient basis for a discrimination or retaliation claim. See Ortiz v. Prudential Ins. Co., 94 F. Supp. 2d 225, 237 (D. Conn. 2000).

The fact is that the record of this case is clear as to the reasons for plaintiffs' dismissal. The record contains absolutely no evidence that CooperSurgical placed him on probation and terminated his employment in retaliation for complaining of discrimination. Even where an employer's intent is at issue, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)); see also Evans, 253 F. Supp. 2d at 650 (applying McDonnell Douglas test and granting summary judgment for employer based on the same rationale that summary judgment was granted on race discrimination claim).

35

## 2. The Court Should Grant Summary Judgment as to the Third Count Because CooperSurgical Did Not Violate 42 U.S.C. § 1981.

Section 1981 prohibits race discrimination in the making and enforcement of private contracts. Race discrimination claims under Section 1981 are analyzed under the same burden-shifting framework as Title VII cases. Keene v. Hartford Hospital, 208 F. Supp. 2d 238, 247 (D. Conn. 2002). Plaintiff must first establish a prima facie case of discrimination based upon his race. McDonnell Douglas Corp., 411 U.S. at 802. For a plaintiff to successfully prove a claim under Section 1981, he must then establish that (1) the plaintiff is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (e.g., making and enforcing of contracts). Mian v. Donaldson, Lufkin & Jenrette Secs. Corp. 7 F.3d 1085, 1087 (2d Cir. 1993); Bray v. RHT, Inc., 748 F.Supp. 3, 5 (D.D.C. 1990). Section 1981 employment discrimination cases are analyzed under the same three-part burden-shifting framework first set forth in McDonnell Douglas Corp., 411 U.S. at 802; see also Rookard v. Kateri Residence, Inc., No. 98 CIV 8301, 2001 WL 180119 at *1 (S.D.N.Y. Feb. 22, 2001) (copy attached).

In order to pursue a cause of action under Section 1981, "a plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief . . . Rather plaintiff must allege some facts that demonstrate that his race was the reason for defendant's actions." Bray, 748 F. Supp. at 5. Moreover, plaintiff "must specifically allege the events claimed constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Chinn v. City University of New York, 963 F. Supp. 218 (E.D.N.Y.

36

1997).

For the same reasons as those set forth above as to plaintiff's race discrimination claims under Title VII and the CFEPA, plaintiff's claim of race discrimination under Section 1981 must fail as a matter of law.

### C. CooperSurgical Seeks A Ruling That Any Damages Plaintiff Might Recover in This Case Are Limited to a One-Month Period.

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, even where a Court does not render judgment for the defendant on the whole case in response to a motion for summary judgment, it may ascertain "what material facts exist without substantial controversy." Fed. R. Civ. P. 56(d). When the Court does so, it "shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just." Fed. R. Civ. P. 56(d). Moreover, if the case is not fully adjudicated on a motion for summary judgment, the court may make an order "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy . . ." Rule 56(d). As such, it is appropriate to address undisputed issues of damages in a Rule 56 summary judgment motion. See Albert v. Smith's Food & Drug Centers, Inc., 356 F.3d 1242, 1254 (10th Cir. 2004) (upholding district court's grant of summary judgment on issue of plaintiff's failure to mitigate damages).

Here, pursuant to Rule 56(d), even if the Court should decline to render judgment upon the whole case on CooperSurgical's motion for summary judgment, CooperSurgical requests that the Court enter a ruling that damages in this case are limited, at most, to the one-month period between the time plaintiff was terminated by CooperSurgical and the time he obtained similar employment

with Sikorsky Aircraft Corporation. This is the period between April 11, 2001, the date he was terminated by CooperSurgical and May 12, 2001, the date he obtained subsequent similar employment with Sikorsky Aircraft.

The law is clear that a person who claims to have been wrongfully terminated from employment has a duty to use reasonable diligence and means to seek other substantially similar employment in order to mitigate any damages caused by the alleged wrongful termination. See Ford Motor Co. v. EEOC, 458 U.S. 219, 232 (1982). "Such a duty of necessity includes the obligation to make reasonable and good faith efforts to maintain that job once accepted." Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1277 (4th Cir. 1985). If the plaintiff either fails to accept or to maintain subsequent substantially similar employment, he "should be said to have voluntarily removed himself from the job market or the work place and forfeited his right to back pay." Id. (citing Ford Motor Co. v. EEOC, 458 U.S. at 232); see also Stanchfield v. Hamer Toyota, Inc., 44 Cal. Rptr.2d 565, 568 (1995) (when one considers the basic principles underlying a wrongfully discharged employee's efforts to mitigate damages, you may properly take into account that employee's failure to retain comparable employment once it has been secured.)) A plaintiff's failure to mitigate damages precludes the award of front pay. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54-55 (2d Cir. 1998) (holding plaintiff not entitled to front pay or back pay because failed to mitigate damages).

In the present case, plaintiff obtained a job with Sikorsky Aircraft in May 2001, less than one month after CooperSurgical terminated him. In that position, he earned $15.62 an hour, see Exhibit E to Cannavino Aff., and was entitled to health insurance benefits. Young Depo. 286:13-20.

38

Plaintiff admits that he was terminated from Sikorsky Aircraft after working for one month for lying on his employment application. Young Depo. 169-70. Specifically, plaintiff falsely stated on his employment application that he had never been convicted of a crime, when in fact, he had been convicted of felony welfare. Young Depo 167:20-25. Plaintiff readily admits that when Sikorsky Aircraft learned that plaintiff had lied on his application, he was immediately terminated. Young Depo. 169:12-20.

By committing fraud which resulted in his termination from Sikorsky Aircraft for cause, the plaintiff voluntarily removed himself from the job market and, therefore, forfeited his right to either back pay or front pay. Thus, in the present case, the plaintiff's damages would be limited to the one month that he was unemployed after being terminated by CooperSurgical.

## VI.  CONCLUSION

For all of the aforementioned reasons, CooperSurgical requests that the Court grant summary judgment on all counts of the Complaint and dismiss the case in its entirety.

Dated at New Haven, Connecticut this 12th day of April 2004.

                                       THE DEFENDANT,
                                       COOPERSURGICAL, INC.

By: _____
        Deborah DeHart Cannavino (CT 08144)
        Kelly P. Lutz-Mai (CT 22763)
        TYLER COOPER & ALCORN, LLP
        One Landmark Square
        Stamford, CT 06901-2501
        Telephone: (203)348-5555
        Fax: (203) 348-3875
        cannavino@tylercooper.com
        mai@tylercooper.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to all counsel and pro-se parties of record this 12th day of April, 2004:

Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT 06604

                                         _____
                                         Deborah DeHart Cannavino
                                         (CT 08144)

# UNPUBLISHED AUTHORITY

Not Reported in F.Supp.2d  
14 NDLR P 47  
(Cite as: 1998 WL 851609 (S.D.N.Y.))

Page 1

United States District Court, S.D. New York.

James JOHNSON RN, Plaintiff Pro Se,  
v.  
THE NEW YORK HOSPITAL and Dr. Skinner, Defendants.

No. 97 CIV. 7089(LAP).

Dec. 9, 1998.

MEMORANDUM AND ORDER

PRESKA, D.J.

*1 Defendants, The New York Hospital (the "Hospital") and Dr. David Skinner, the Hospital's Chief Executive Officer ("Dr.Skinner"), have moved to dismiss plaintiff's complaint pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (the "RA") on the grounds that it is barred by the doctrines of res judicata and/or collateral estoppel, and, alternatively, for summary judgment.

BACKGROUND

The following facts, viewed in the light most favorable to plaintiff, are relevant to this motion: James Johnson, R.N. ("Johnson") was employed by the Hospital as a registered nurse from 1987 until August 30, 1991. (Affidavit of Stacey Mackey sworn to on January 15, 1998 ("Mackey Aff.") ¶ 2). He was discharged from his duties after an incident on August 25, 1991, when he came to the Hospital while off-duty and engaged in an altercation with the hospital security guards as they attempted to remove him from the premises. He was intoxicated at the time of the incident. (Mackey Aff. ¶ 7, Ex. A). Subsequently, Johnson filed a written grievance with the Hospital objecting to his termination and requesting that he be reinstated to his former position as a registered nurse. (Mackey Aff. ¶ 8, Ex. B). Deborah Fuller, then the Vice President for Human Resources, responded to Mr. Johnson's grievance by letter dated October 2, 1991, concluding that Johnson's misconduct on August 25, 1991 justified his discharge. (Mackey Aff. ¶ 9, Ex. D). On October 9, Johnson again wrote to Ms. Fuller requesting reconsideration, and she responded on October 24 upholding his discharge. (Mackey Aff. ¶¶ 10-11, Exs. E, F). Johnson then wrote to Dr. Skinner in January of 1992 seeking reinstatement, and Dr. Skinner responded by letter dated February 4, 1992 denying his request. (Mackey Aff. ¶¶ 12-13, Exs. G, H).

Also in February of 1992, Johnson filed an administrative charge with the federal Department of Health and Human Services, Office for Civil Rights ("OCR"), alleging that his termination violated the RA. (Mackey Aff., Ex. I). In this charge, Johnson again sought reinstatement at the Hospital. The OCR dismissed Johnson's charge on November 20, 1992. (Mackey Aff. ¶¶ 14-15, Ex. J). Johnson appealed this determination but was denied relief by letter dated March 1994. (Mackey Aff. ¶ 16, Ex. K).

In April 1994, Johnson filed a complaint in the Southern District of New York against the Hospital and Dr. Skinner ("1994 Litigation") complaining that he had been discharged because of his alleged disability of alcoholism in violation of the RA. (1994 Compl. ¶ 1, Ex. B to the Affidavit of Barbara E. Hoey, Esq., sworn to on January 14, 1998 (the "Hoey Aff.")). In November 1995, the district court judge bifurcated the issues for the trial, the first being whether Johnson, by reason of the August 25, 1991 misconduct, was excluded from the RA's protection. (Hoey Aff., Ex. F). Trial commenced on November 28, 1995, and plaintiff and his then-attorney fully participated in the trial. (Hoey Aff., ¶ 8).

*2 The first part of the trial considered only whether plaintiff was excluded from protection as an "individual with a disability" under the RA because he was an "individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." 29 U.S.C. § 706(8)(C)(v). The jury was asked to answer a single interrogatory, "Did Mr. Johnson's employment at New York Hospital, by reason of his alcohol abuse, constitute a direct threat to property or the safety of others?" It answered in the affirmative (Ex. C to Hoey Aff., p. 3), and judgment was entered in favor of the Hospital dismissing Johnson's complaint. Johnson appealed, but the Court of Appeals affirmed

Not Reported in F.Supp.2d
(Cite as: 1998 WL 851609, *2 (S.D.N.Y.))

Page 2

on September 13, 1996. (Hoey Aff., Ex. C).

While the 1994 Litigation was pending, a second case was also moving through the system. In September 1992, Johnson was hired as a registered nurse by St. Clare's Hospital ("St.Clare's"). He was terminated by St. Clare's in December 1995 for insubordination. (Ex. D to Hoey Aff., ¶ 8). He subsequently filed a complaint in this court alleging unlawful discharge due to alleged disabilities (including this status as a recovering alcoholic) in violation of both the RA and the ADA (Ex. D to Hoey Aff.). St. Clare's motion for summary judgment was granted on May 13, 1997 based upon Magistrate Judge Peck's finding that Johnson had "failed to submit sufficient medical evidence ... demonstrating that any impairment he ha[d] limit[ed] one or more major life activities ...." (Hoey Aff., Ex. E at 16).

On June 2, 1997, Johnson sent another letter to Dr. Skinner seeking reinstatement. (Mackey Aff., Ex. L). On July 25, 1997, Stacey Mackey, Employee Relations Representative, denied his request for reinstatement, explaining that "[g]iven the circumstances of [his] discharge, Hospital policy provides that you are not eligible for reemployment." (Mackey Aff., Ex. M). Johnson filed a charge of discrimination at the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue by the EEOC in August, 1997. (Hoey Aff., Ex. I). This action followed. Here, Johnson alleges that, in violation of both the RA and the ADA, he was denied reinstatement because of his past record and the "perception" that he has a disability. (Compl.¶ 8).

DISCUSSION

Defendants move to dismiss and/or for summary judgment on several grounds. First, defendants argue that Johnson is alleging the same facts and seeking to resolve the same claim in the current action that was determined in the 1994 Litigation. Thus, they contend, this action is barred by the doctrine of res judicata. Johnson argues that although the parties are the same, he did not get a chance to litigate certain issues because of the bifurcation of issues in the 1994 Litigation. Specifically, he argues that the "sole issue in the first matter was if [his] current use of alcohol excluded [him] from protection under the 'Rehabilitation Act'.' < <currency> > (Affirmation of James Johnson in Opposition to Defendant's Motion ("Johnson Aff."), ¶ 4). Thus, he claims he did not have the opportunity to establish a prima facie case, and it was never determined whether or not he was terminated due to misconduct or because of his alcoholism. (Johnson Aff., ¶¶ 5-6).

*3 Second, defendants argue that Johnson should be barred by the doctrine of collateral estoppel from re-litigating those issues that have previously been litigated. Defendants contend that Johnson had a full and fair opportunity to litigate the issues he raised in the 1994 Litigation. (Defendants' Memorandum of Law ("Def.Mem.") at 19-20). In response, Johnson asserts the same argument as he does against the grounds for res judicata; that he was denied a previous opportunity to litigate all of the issues in dispute. (Johnson Aff., ¶ 4).

Third, in the alternative, defendants move for summary judgment. They argue that Johnson has not fulfilled his burden in proving employment discrimination and submit that Johnson was treated the same way a "non-disabled" former employee would have been treated given his misconduct in the 1991 incident. (Def. Br. at 24). Johnson's evidence to the contrary is lacking.

A. *RES JUDICATA*

Traditionally, for a claim to be barred by the doctrine of res judicata there must have been a final judgment on the merits involving the same claim and parties. *See, e.g., Greenberg v. Board of Governors of the Fed. Reserve System,* 968 F.2d 164, 168 (2d Cir.1992). Application of the doctrine of res judicata serves several purposes: it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

Following final judgment on the merits of a cause of action, the parties are barred not only from relitigating actually litigated matters, but also from litigating any related matters that could have been raised in the original action. *See Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The burden is on

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 1998 WL 851609, *3 (S.D.N.Y.))

Page 3

the proponent of res judicata to "demonstrate that: (1) the court rendered a final judgment on the merits in the prior case; (2) the prior suit involved the same parties or their privies; and (3) the opponent bases the subsequent suit on the same causes of action." *Usina Costa Pinot S.A. v. Louis Dreyfus Sugar Co.,* 933 F.Supp. 1170, 1175-76 (S.D.N.Y.1996) (citing *NLRB v. United Technologies Corp.,* 706 F.3d 1254, 1259 (2d Cir.1983)).

It is undisputed that there was a final judgment on the merits in the 1994 Litigation. Johnson's claims were dismissed after trial and affirmed on appeal. There is also no dispute that the parties are the same. Thus, the issue I am left to address is whether this is the same cause of action as in the 1994 Litigation.

In determining what claims have actually been litigated, courts have distinguished between a new application for employment and a demand for "reinstatement" which "seeks to redress the original termination." *Burnam v. Amoco Container Co.,* 755 F.2d 893, 894 (11th Cir.1985) (quoting *Collins v. United Airlines, Inc.,* 514 F.2d 594, 596 (9th Cir.1975). The Third Circuit addressed this difference in *NLRB v. Textile Machine Works,* 214 F.2d 929 (3d Cir.1954):

> *4 A discharged employee who seeks to be reinstated is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer. The word reinstatement must be employed in this connection as the equivalent of uninterrupted employment.... The concept of a discriminatory refusal to hire is a different concept.
>
> *Id.* at 932. Similarly, in *Morrison v. Detroit-Macomb Hosp.,* 3 AD Cases (BNA) 45 (E.D.Mich.1993), the plaintiff complained that she was discharged because of her disability. Following the dismissal of that claim, she sued a second time based on the employer's failing to reinstate her. Applying the doctrine of res judicata, the court held that such refusal to re-employ plaintiff did not give rise to a new cause of action.

In the 1994 Litigation, plaintiff Johnson actually litigated the issue of whether he was excluded from coverage by the RA as a person "whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others," 29 U.S.C. § 706(8)(C)(v), that is, whether he was a person with a disability within the meaning of the RA. The jury found against Johnson, and the Court of Appeals affirmed.

Under the doctrine of res judicata, Johnson may not relitigate that issue or any issue that he could have raised in the 1994 Litigation. *Sunnen, supra,* 333 U.S. at 597; *see also Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1232-1233 (2d Cir.1977). Thus, he cannot now re-litigate the issue of whether his discharge was discriminatory under the RA.

Plaintiff has attempted to circumvent this bar in two ways. First, Johnson alleges that he sought "reinstatement" (Compl.¶ 8) and that the Hospital refused because of his "handicap", his "record" of disability and because the Hospital "perceived" him to be disabled in violation of the ADA and the RA. (Compl.¶¶ 8,9). Just as in *Burnam* and *Morrison,* discussed *supra,* Johnson's failure to reinstate claim is merely an attempt to redress--or reiterate--the original termination. As such, it is barred by res judicata.

Second, Johnson adds to his original claim a violation of the ADA. Upon comparing both the complaint in the 1994 Litigation and the complaint in the present suit, they are virtually identical minus the addition of the alleged ADA violation. Because Johnson *could* have litigated his present claim under the RA in the 1994 Litigation, he is barred by res judicata from litigating it now. *See Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 38 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993).

B. COLLATERAL ESTOPPEL

Assuming arguendo that I do not bar Johnson from pursuing his complaint under the doctrine of res judicata, in the alternative, Johnson would be collaterally estopped from establishing his prima facie case of employment discrimination under the RA and the ADA.

*5 "Collateral estoppel, or issue preclusion, bars the re-litigation of issues actually litigated and decided in the prior proceeding, as long as the determination was essential to that judgment." *Central Hudson Gas & Elec. Corp. v. Empresa*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                            Page 4
(Cite as: 1998 WL 851609, *5 (S.D.N.Y.))

*Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995); *see Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986) (an issue determined in one proceeding normally may not be reexamined), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Four elements must be shown in order for collateral estoppel to apply:
  (1) the issue in both proceedings must be identical,
  (2) the issue in the prior proceeding must have been actually litigated and actually decided,
  (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and
  (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.
*Levy v. Kosher Overseers Assoc.,* 104 F.3d 38, 41 (2d Cir.1997); *Gelb,* 798 F.2d at 44;

Each of these elements can be met here.

In order to assert a prima facie case of unlawful discrimination under the ADA and the RA, based on the Hospital's alleged failure to reinstate him in June 1997, Johnson must show:
  (1) he is a "disabled person" within the meaning of the statutes;
  (2) he is otherwise qualified to perform the duties [of the position];
  (3) he was not hired because of his disability; and
  (4) that the employer is subject to the statutes.
*See D'Amico v. City of New York,* 132 F.3d 145, 150 (2d Cir.), *cert. denied,* 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998); *Estwick v. U.S. Air Shuttle,* 950 F.Supp. 493, 502 (E.D.N.Y.1996); *Joyce v. Suffolk County,* 911 F.Supp. 92 (E.D.N.Y.1996).

The statutes define the term, "disability" in three alternative ways:
  (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
  (2) a record of such an impairment; or
  (3) being regarded as having such an impairment.
42 U.S.C. § 12102(2)(ADA); 29 U.S.C. § 794(a) and 29 U.S.C. § 706(8)(B)(RA). Johnson's complaint alleges that by the second and third statutory definitions of "disability," he was an individual with a disability at the time he sought to be reinstated to his former position at the Hospital. (Compl.¶¶ 8-9).

Under both the ADA and the RA, an individual is excluded from the definition of "individual with a disability" if it is found that his employment poses a "direct threat" to the health or safety of others. 42 U.S.C. § 12111(3)(ADA); 29 U.S.C. § 706(8)(C)(v) (RA). Thus, protection under the RA is paralleled in the ADA. *See Maddox v. Univ. of Tenn.,* 62 F.3d 843, 846 n. 2 (6th Cir.1995) (holding that the court's reasoning with respect to the Rehabilitation Act claim applied with equal force to the ADA claim and would be reviewed accordingly); *Klem v. Popular Ford Sales, Inc.,* 975 F.Supp. 196, 199 (E.D.N.Y.1997) (the "Rehabilitation Act and Title VII precedent is also controlling with respect to ADA claims.); *Greenberg v. New York State,* 919 F.Supp. 637, 642 (E.D.N.Y.1996) (holding that the definition of handicap under the RA is "essentially identical to the definition of disability under the ADA").

*6 Once a plaintiff litigates and loses a claim of employment discrimination, he cannot relitigate the same issues against the same employer. *Clarke v. Carlucci et al.,* 834 F.Supp. 636, 641 (S.D.N.Y.1993), *aff'd without opinion,* 29 F.3d 622 (2d Cir.1994). Here, Johnson has already litigated and lost the issue of whether he is a "direct threat" to the health and safety of others. Johnson's attempt to frame his claim under the ADA--which is wholly congruent in all relevant respects--does not change the fact that the same issue was already litigated and decided in the 1994 Litigation. Accordingly, I find that the doctrine of collateral estoppel bars Johnson's claim.

C. *SUMMARY JUDGMENT*

Defendants also contend, in the alternative to their motion to dismiss, that summary judgment should be granted. Under Fed.R.Civ.P. 56(c), "[a] motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *see* Fed.R.Civ.P. 56(c). *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co.,*

Not Reported in F.Supp.2d                                                                                                      Page 5
(Cite as: 1998 WL 851609, *6 (S.D.N.Y.))

*Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the particular litigation if application of the relevant substantive law requires their determination. *Anderson,* 477 U.S. at 248.

"A party who moves for summary judgment has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996); *accord Chambers,* 43 F.3d at 36. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," however, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *accord Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223-24 (2d Cir.1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). The moving party, in other words, does not bear the burden of disproving an essential element of the nonmoving party's claim.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule,* 85 F.3d at 1011; *accord* Fed.R.Civ.P. 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. Instead, the nonmovant must " 'come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." ' *Trans Sport, Inc. v. Starter Sportswear,* 964 F.2d 186, 188 (2d Cir.1992) (citation omitted).

*7 "In ruling on a motion for summary judgment, the district court is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.; accord Chambers,* 43 F.3d at 36. "The function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried." *Rule,* 85 F.3d at 1011. Accordingly, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Id.* Similarly, "[a]ny weighing of the evidence is the prerogative of the finder of fact." *Id.* "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a *reasonable* inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers,* 43 F.3d at 37 (emphasis added).

Summary judgment is available to defendants in an employment discrimination case. *See, e.g., D'Amico,* 132 F.3d at 149; *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997). It often is difficult to apply summary judgment analysis in employment discrimination cases because they necessarily turn on the intent of the alleged discriminator, and plaintiffs will rarely uncover direct evidence of discriminatory intent. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464-65 (2d Cir.1989). Nonetheless, a plaintiff must produce some evidence from which a reasonable inference of discrimination can be drawn. *McLee,* 109 F.3d at 134-35. For a discrimination plaintiff to survive a motion for summary judgment he must do more than present " 'conclusory allegations of discrimination;" ' *Duprey v. Prudential Insur. Co. of America,* 910 F.Supp. 879, 883 (N.D.N.Y.1996) (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985)); "he must offer 'concrete particulars' to substantiate [his] claim." *Id.*

To address these concerns, in discrimination cases under the ADA or the RA, courts apply the same three-part test, announced in *McDonnell Douglas Corp. v. Green,* 412 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721-22 (2d Cir.1994) (applying the *McDonnell Douglas* standard to handicap discrimination claim brought under the Rehabilitation Act); *Duprey,* 910 F.Supp. at 883 (applying this test to an ADA claim). Under this standard, a plaintiff bears the initial burden, albeit minimal, of establishing a prima facie case of disability discrimination. *See Fisher v. Vassar*

Not Reported in F.Supp.2d  
(Cite as: 1998 WL 851609, *7 (S.D.N.Y.))

Page 6

*College*, 114 F.3d 1332, 1340 & n. 7 (2d Cir.1997) (in banc) (collecting cases), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996).

If plaintiff establishes his prima facie case, the burden of production shifts to the defendant to produce "an explanation to rebut the prima facie case-- *i.e.*, the burden of producing evidence that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.' " *Fisher*, 114 F.3d at 1335 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1093)). As the Court of Appeals noted in *Fisher*, "[a]ny legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case." 114 F.3d at 1336. Accordingly, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof." *Id.* (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094).

*8 Once a defendant has met its burden, "the presumption that triggered the defendant's burden of production ... 'drop[s] out of the picture' " *Id.* (quoting *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.1994) (quoting *St. Mary's*, 509 U.S. at 509, 113 S.Ct. at 2748)). The "factual inquiry proceeds to a new level of specificity," *St. Mary's*, 509 U.S. at 516, 113 S.Ct. at 2752; *Fisher*, 114 F.3d at 1336, and the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision" and that plaintiff's disability was. *See St. Mary's*, 509 U.S. at 508, 113 S.Ct. at 2747; *Fisher*, 114 F.3d at 1336. In all cases, the plaintiff always "retains that ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." *Fisher*, 114 F.3d at 1336 (quoting *St. Mary's*, 509 U.S. at 508, 113 S.Ct. at 2747-48 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (alteration in *St. Mary's* ))).

Merely showing that the employer's proffered reason is pretextual--that the stated reason is not the real reason--will not necessarily carry the plaintiff's ultimate burden of persuasion. Rather, the plaintiff must also demonstrate that the true reason was an illegally discriminatory one. *Fisher*, 114 F.3d at 1338; *see St. Mary's*, 509 U.S. at 515, 113 S.Ct. at 2752 ("[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.").

The fact that a party is proceeding pro se does not excuse that party from the usual requirements of summary judgment. *See, e.g., Kadosh v. TRW*, No. 91 Civ. 5080(PKL), 1994 WL 681763 at *4-5 (S.D.N.Y. Dec. 5, 1994); *DeCrosta v. National Post Office Mail Handlers*, Nos. 90-CV-1269, 90-CV-585, 1994 WL 173825 at *6 (N.D.N.Y. May 4, 1994); *Greene v. Civilian Police Review Bd.*, No. 86 Civ. 0212(KC), 1988 WL 31857 at *2 (S.D.N.Y. Mar. 25, 1988); *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F.Supp. 259, 262 (S.D.N.Y.1980). Nonetheless, in deciding defendants' motion for summary judgment, I have taken into account Johnson's pro se status and the liberal construction accorded to pro se pleadings. *See, e.g., Hanlin v. Mitchelson*, 794 F.2d 834, 838-39 (2d Cir.1986); *Bellamy v. McMickens*, 692 F.Supp. 205, 210 (S.D.N.Y.1988). With these standards in mind, I will analyze plaintiff's case.

1. *The Prima Facie Case*

To establish a prima facie case of unlawful discrimination under the ADA and/or the RA a plaintiff must demonstrate that (1) his employer is subject to the [disability acts]; (2) he suffers from a disability within the meaning of the [disability acts]; (3) he is "otherwise qualified", i.e., he could "perform the essential functions of his job with or without reasonable accommodation;" and (4) he was fired because of his disability. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 1998 WL 50127 (2d Cir. Feb.4, 1998); *D'Amico*, 132 F.3d at 150.

*9 First, the parties do not contest that the Hospital is subject to the ADA and the RA. As to the second prong, Johnson must show that he suffers from a disability within the meaning of the disability acts. Under both the ADA and the RA, an individual is excluded from the definition of "individual with a disability" if it is found that his employment poses a "direct threat" to the health or safety of others. 42 U.S.C. § 12111(3)(ADA); 29 U.S.C. § 706(8)(C)(v)(RA). There is no dispute that the jury in the 1994 Litigation concluded that Johnson did pose a "direct threat" and, therefore, was not "an individual with a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works