Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21108325, *2 (S.D.N.Y.))

Page 5

November 30, 1992. In his evaluation of plaintiff's performance for the period of December 1, 1992 to November 15, 1993, Mr. Lee noted that plaintiff's "technical skills do not meet the minimum requirements for a senior position in Finance. After review and evaluation, it is evident that he requires training and education in basic accounting fundamentals." Gay Aff. Exhibit T. In addition, Mr. Lee noted that

> a significant part of [plaintiff's] role is to review the work of Analysts. This has not been sufficiently performed. During the first quarter, a significant cost of sales error was noted by the Marketing Controller. The cause was an incorrect rate for copacking SKU in the cost of goods sold report. During the first and second quarters, a series of journal entries were made incorrectly, causing freight exposure being understated by $600,000.

*3 Id.

Mr. Lee gave plaintiff a "Below Standard" rating in his performance appraisal for this period. Id.

In March 1994, plaintiff and other Colgate employees were assigned to install the so-called Ross System General Ledger, Accounts Payable and Purchasing Program ("Ross") in Puerto Rico. Plaintiff received a letter dated January 10, 1995 from the Comptroller of Puerto Rico which praised plaintiff and his co-workers for their successful implementation of the relevant software. See Exhibit 8, Letter from William Sibaja. Plaintiff claims that although Colgate's policy manual dictates that employees receive yearly performance appraisals, he did not receive one for his work on the Ross system in Puerto Rico.

Plaintiff returned to New York in 1995 after the completion of the Ross installation in Puerto Rico. According to the Amended Complaint, unlike Carol Smith and Greg Cucco, two of plaintiff's co-workers on the ROSS project, plaintiff was not assigned to work on the so-called SAP project in New Jersey upon his return from the installation project. Pursuant to his discrimination claims, plaintiff asserts that Ms. Smith and Mr. Cucco are both white and younger than plaintiff. Colgate contends that Mr. Cucco is in fact one year older than plaintiff; Ms. Smith is less than five years younger than plaintiff. See Tr. at 21.

Thereafter, in March 1995, plaintiff applied for a Grade 15 Special Packaging Manager position in Colgate's U.S. Materials Management Unit. Plaintiff claims that Dennis Hickey, the Executive Vice President and Chief Financial Officer of Colgate North America, did not allow plaintiff to interview for this position. Plaintiff suggests that Mr. Hickey prevented him from pursuing the position for at least two reasons: (1) because of his disapproval of plaintiff's "activities with the African American Forum," an organization which ostensibly was organized to address issues of race-based discrimination at Colgate; and (2) because of Mr. Bailey's "history of complaints regarding matters of race [at Colgate]." See Am. Comp., ¶ 67. Colgate denies that Mr. Bailey's race or his membership in the African American Forum had anything to do with the company's employment decisions with respect to Mr. Bailey. Rather, Colgate asserts that Mr. Bailey was objectively unqualified for the Special Packaging Manager position.

In April 1995, at a meeting held by Michele Mayes, Colgate's Vice President of Human Resources for the U.S. Company, and Mr. Hickey, plaintiff was offered a severance package in exchange for his resignation. Plaintiff rejected this offer.

At a May 23, 1995 meeting, Ms. Mayes and Mr. Hickey informed plaintiff that they did not think that he was qualified for Grade 14 employment with Colgate. They offered him a Grade 12 Staff Accountant position without any reduction from his Grade 14 salary. Plaintiff rejected this offer, too. Colgate claims that in light of Mr. Bailey's intransigence with respect to the issue of his placement in a Grade 14 level position, the company then terminated his employment.

B. Plaintiff's Allegations of Discrimination

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d                                                                                       Page 6
(Cite as: 2003 WL 21108325, *4 (S.D.N.Y.))

*4 With respect to the facts summarized above in this Opinion, plaintiff claims that because of his *race* (1) he was not assigned to work on the SAP project in New Jersey. Am. Compl. ¶ 66; (2) he was prevented from interviewing for a Grade 15 position in March 1995. Am. Compl. ¶ 67; (3) he was offered what he considers to be an inferior position during the May 23, 1995 meeting with Ms. Mayes and Mr. Hickey. Am. Compl. ¶ 69; and (4) he was terminated on May 23, 1995. Am. Compl. ¶ 77.

Plaintiff claims that because of his *age* he was not assigned to work on the new SAP project in New Jersey and was terminated on May 23, 1995.

C. Plaintiff's Allegations of Racially Hostile Work Environment

Plaintiff alleges that he was subjected to a litany of racially-insensitive incidents during his tenure at Colgate which cumulatively fostered and were constitutive of a hostile work environment. *See* Am. Compl. ¶ 12. According to plaintiff,
> [t]his environment was created and/or condoned by the Defendant's employees and by the Defendant's use of racially, [sic] derogatory terms, images and materials. Even after [plaintiff] brought these matters to defendant's attention, Defendant failed to act up to and including the date of [plaintiff's] termination. *Id.*

In particular, plaintiff claims that: (1) in New York in 1985, plaintiff viewed, in an accounting department manual (which plaintiff was required to use in the course of his employment) the term "Nigger Soap" used with reference to soap residue. Mr. Bailey asserts that the term "Nigger Soap" describes a soap or residue of inferior quality. This use of the word "nigger" to denote a quality of inferiority, Mr. Bailey claims, was offensive and contributed to a hostile work environment; (2) during an audit in Kansas City in 1986, a co-worker named Robert "Bob" Proctor introduced himself as the Grand Wizard of the Ku Klux Klan and repeatedly used the word "nigger" in the presence of Mr. Bailey. During oral argument on the pending motion for summary judgment, defendant asserted that it cannot find any record of a person named Bob Proctor being employed at Colgate at that time; (3) during an audit in France in 1987, plaintiff viewed a sign that referred to black soap residue as "Nigger Soap"; (4) at a meeting in Texas in February 1989, he overheard a co-worker use the offensive Afrikaner word *Kaffa* [FN2] with reference to blacks; (5) in June 1990, during a budget review, plaintiff prepared "budget templates and graphics which depicted a logo of a smiley, black face, black top-hatted, bright-eyed minstrel for Defendant's 'Darkie Toothpaste." ' Am. Compl. ¶ 28. Darkie Toothpaste is a product manufactured by a company which Colgate acquired and which was marketed only in Asia. Plaintiff perceived the logo to be racially insensitive and offensive; (6) in New York in 1990, a co-worker referred to plaintiff as "one big nigger." Bailey Tr. at 382-84; (7) in Puerto Rico in 1994, [FN3] plaintiff heard a co-worker, Carol Smith, tell a racially insensitive joke about Puerto Ricans, which plaintiff perceived to be tasteless and offensive; and (8) in 1995, after he was informed of his termination, plaintiff overheard a conversation in a bathroom at Colgate in which an employee said, presumably with reference to Mr. Bailey: "We got another one. These niggers don't get it. We decide who comes and goes at Colgate." Am. Compl. ¶ 72. *See generally* Am. Compl. ¶¶ 13, 19, 28, 32, 33, 47, 60, 72.

FN2. The word Kaffir, or Kafir, is a derogatory slang term in the South African lexicon which is used with reference to black people and negative qualities, including unreliability. See, e.g., Oxford English Dictionary.

FN3. In the Amended Complaint, plaintiff alleges that this incident took place in 1994. See Am. Complt. ¶ 60. By contrast in his supplemental memorandum of law addressing the effect of *Morgan* on the hostile work environment claim, plaintiff claims that the incident took place on January 14, 1995. Pl.'s Supp. Br. at 3.

D. Plaintiff's Allegations of Retaliation

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d
(Cite as: 2003 WL 21108325, *5 (S.D.N.Y.))

Page 7

*5 Plaintiff alleges that as a result of his role in the organizing of, and his participation in, the African American Forum at Colgate in 1992 and 1993, Colgate retaliated against him by: (1) giving him a below-standard performance evaluation in 1993. *See* Am. Compl. ¶ 100; (2) transferring him from Atlanta to Puerto Rico in 1994. *See* Am. Compl. ¶ 55; (3) not allowing plaintiff to interview for a Grade 15 position in March 1995. *See* Am. Compl. ¶ 67; and (4) terminating plaintiff's employment on May 23, 1995. *See* Am. Compl. ¶ 100.

Under the heading of "Racially Hostile Environment" in the Amended Complaint, but seemingly with relation to the foregoing issues of retaliation and discrimination, plaintiff claims that from April 1993 to the first quarter of 1994, Stan Brothers, who was the Manager of Colgate's Atlanta operation, maintained his own separate file on Mr. Bailey. Plaintiff claims that these files included performance appraisals and letters to and from Mr. Bailey during his period of service in Atlanta. Plaintiff claims that this file and the materials therein mysteriously disappeared from Mr. Brothers' files in 2000 or 2001.

Plaintiff claims that his supervisor, Al Lee, told him that he would receive an "above average" rating for the period of December 1, 1992 to October 31, 1993. Plaintiff claims that Mr. Brothers met with Mr. Lee and directed him to "change the language of [plaintiff's] performance appraisal." Moreover, plaintiff asserts that "Stan Brothers identified language Al Lee was to use in the performance appraisal." Am. Compl., ¶ 51. Plaintiff claims that as a result of this manipulation by Mr. Brothers, he received a "below standard" performance appraisal for the period of December 1, 1992 to November 15, 1993. *Id.*, ¶ 52.

In addition, with respect to claims of retaliation, plaintiff notes that employees in Atlanta under the supervision of Al Lee filed sexual harassment charges against Mr. Lee in 1993. Plaintiff was interviewed pursuant to Colgate's investigation of this matter. Am. Compl. ¶ 54. The Amended Complaint notes that "Al Lee knew of the [sic] Ismael Bailey's cooperation with the investigation; Al Lee also knew that Ismael Bailey opposed discriminatory practices at Defendant's place of employment." *Id.*, ¶ 54. It appears that plaintiff wishes to raise an inference of retaliation for his involvement in this investigation and "opposition" to discriminatory practices.

It is apparent that Mr. Bailey believes that he was the victim of retaliation because of his involvement in the African American Forum, a group which "raised issues of equal employment." Am. Compl. ¶ 100. Plaintiff alleges that Colgate was aware of his creation of and participation in the Forum. [FN4] He alleges that his affiliation with the Forum contributed to his receipt of below standard performance reviews, his denial of an opportunity to interview for a Grade 15 position, and the ultimate termination of his employment with Colgate. *Id.*

FN4. In his deposition testimony, Alfred J. Lee stated that the plaintiff did not create and was never the head of the African American Forum. *See* Gay Aff. Exhibit AA.

III. SUMMARY JUDGMENT STANDARD

*6 According to Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith" if it is shown that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4, 106 S.Ct. 2548, 2552 n. 4, 91 L.Ed.2d 265 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999) (internal quotations and citations omitted).

In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21108325, *6 (S.D.N.Y.))

Page 8

pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In this vein, the Second Circuit has noted that "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). Of course, this standard applies with equal force in discrimination cases as it would in any other case in federal court. *See Ashton v. Pall Corp.,* 32 F.Supp.2d 82, 87 (E.D.N.Y.1999) (" 'the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to commercial or other areas of litigation' "). Thus, courts within the Second Circuit "have not hesitated to grant defendants summary judgment in such cases where ... plaintiff has offered little or no evidence of discrimination." *Scaria v. Rubin,* 1996 U.S. Dist. LEXIS 9659, at *14 (S.D.N.Y.1996) (Peck, M.J.), *aff'd,* 117 F.3d 652 (2d Cir.1997).

In assessing the record to determine whether genuine issues of material fact are in dispute, courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). However, if the moving party meets its initial burden, the non-moving party may not rely on conclusory allegations or speculation to create factual disputes. Instead, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (internal quotations and citations omitted) (alteration in original).

In the employment discrimination context, courts must be sensitive to the fact that evidence of discrimination is generally not overt: "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." *Bickerstaff v. Vassar College,* 196 F.3d 435, 447 (2d Cir.1999) (internal quotations omitted). Courts must also "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.... Thus, the question is whether the evidence can *reasonably* and *logically* give rise to an inference of discrimination under all of the circumstances." *Id.* (emphasis added). Furthermore, when the case involves a claim of discrimination, the court should view the record in its totality, rather than in a piecemeal fashion. *Fitzgerald v. Henderson,* 251 F.3d 345, 360 (2d Cir.2001), *cert. denied sub nom Potter v. Fitzgerald,* 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002).

**\*7** The Second Circuit has directed that trial courts "[b]e especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999); *see also Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994) ("Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate records, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination").

In its motion, defendant argues that it is entitled to judgment as a matter of law on both procedural and substantive grounds.

IV. Time bar: Title VII and the ADEA

Colgate argues that almost all of plaintiff's claims are time barred and cannot be saved by the continuing violation doctrine. The court will address this argument with respect to each relevant claims.

First, defendant argues that plaintiff's Title

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d  Page 9
(Cite as: 2003 WL 21108325, *7 (S.D.N.Y.))

VII and ADEA discrimination claims regarding all events prior to April 15, 1995 are time-barred. In New York, Title VII and ADEA claims must be filed with the EEOC or the NYSDHR within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(1) ("in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... [a] charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful practice occurred"); 29 U.S.C. § 626(d)(2) ( "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed ... within 300 days after the alleged unlawful practice occurred." See also Butts v. New York City Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1400 (2d Cir.1993) superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 692-93 (2d Cir.1998) (noting that many of the plaintiff's "allegations were time-barred, since they occurred ... outside the 300-day limitations period for filing EEOC charges applicable to claims arising in New York").

Plaintiff filed a charge alleging age and race discrimination with the NYSDHR on February 8, 1996. Unless there is an exception to the application of the limitations period for filing, plaintiff's Title VII and ADEA claims arising more than 300 days before he filed his charge--i.e., claims arising before April 15, 1995--are time-barred and must be dismissed.

*Continuing Violation Doctrine*

According to the continuing violation doctrine, if a plaintiff files an EEOC charge that is timely as to *any* incident of discrimination that is in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely. See *Burrowes v. Brookdale Hospital and Medical Center,* 2003 WL 1240609 at *2 (2d Cir. March 18, 2003) (citing *Van Zant v. KLM Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996).

*8 As an initial matter, it is unclear how, if at all, the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (hereinafter *"Morgan"* ) has affected the vitality of the continuing violation doctrine in this Circuit. See *Burrowes,* 2003 WL 1240609 at *2 ("Our court has not yet had occasion to rule on what, if anything, of the continuing violation doctrine may survive the Supreme Court's decision in [*Morgan* ]"). In *Morgan,* the Supreme Court held that Title VII precludes recovery for discrete acts of discrimination that occur outside the statutory time period, even if the acts are related to acts alleged in timely filed charges. *Id.* at 2072. Writing for the 5-4 majority, Justice Thomas explained that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* The Court further explained that

[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover acts that "occurred" within the appropriate time period.... All prior discrete discriminatory acts are untimely filed and no longer actionable.
*Id.* at 2073.

Some courts in this district have interpreted *Morgan* to have sounded the death knell of the continuing violation doctrine. See, e.g., *Coffey v. Cushman & Wakefield, Inc.,* 2002 WL 1610913 *2 (S.D.N.Y. July 22, 2002) (Koetl, J.) ("Contrary to the prior rule in this Circuit, the statute of limitations thus bars relief for such acts even if they are related to other actionable conduct that is not time-barred and might otherwise be considered part of a continuing violation") (citing *Morgan* at 2070-73). It is not necessary for the court to weigh in on this debate to decide this case. As Judge Scheindlin observes in *Gross v. National Broadcasting Company, Inc.,* 2002 WL 1482621 at *7 (S.D.N.Y. July 10, 2002), the holding in *Morgan* is in accord with Second Circuit law "which states that alleged failures to compensate adequately, transfers, job

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d
(Cite as: 2003 WL 21108325, *8 (S.D.N.Y.))

Page 10

assignments, and promotions cannot form the basis for a continuing violation claim" (citing, *inter alia*, *Pollis v. New York Sch. For Social Research*, 132 F.3d 115, 119 (2d Cir.1997)). *See also Crosland v. City of New York*, 140 F.Supp.2d 300, 308 (S.D.N.Y.2001) ("It is well-settled that transfers, demotions, failure to compensate adequately, and failure to promote are discrete acts which do not constitute a continuing violation").

The continuing violation doctrine generally has been limited to situations where a specific discriminatory policy or mechanism has been alleged. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996). *See also Crosland v. City of New York*, 140 F.Supp.2d 300, 307 (S.D.N.Y.2001) (doctrine generally "limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests"). Thus, " 'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation' " *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (quoting *Lambert*, 10 F.3d at 53).

*9 [1] While plaintiff alleges that there is a general history of race-related hostility and discrimination at Colgate, he does not identify a specific discriminatory policy or mechanism. The Amended Complaint describes a number of seemingly disconnected episodes and occurrences with respect to this plaintiff, alleging, *inter alia*, that in 1985 in New York, plaintiff saw in an accounting department instruction guide the term "nigger soap" used with reference to black soap residue; during an audit in 1986 in Kansas City, a co-worker referred to himself as the Grand Wizard of the Ku Klux Klan and made racist epithets; during an audit in 1987 in France, plaintiff saw a sign on defendant's property that referred to black soap residue as "nigger soap"; at a meeting in February 1989 in Texas, plaintiff overheard a co-worker use racially insensitive and derogatory Afrikaner word; in June 1990, while engaging in employment-related activities, plaintiff viewed what he perceived to be a racist logo, depicting a minstrel-like visage, for a product called Darkie Toothpaste; in January 1990 in New York, a co-worker referred to plaintiff as "one big nigger"; in 1994 in Puerto Rico, plaintiff overheard a co-worker tell a derogatory joke about Puerto Ricans; in 1995, Colgate terminated plaintiff's employment; and in 1995, after he was informed of his termination, plaintiff overheard a conversation in an office bathroom during which an employee used the term "nigger," ostensibly with reference to plaintiff.

Whereas plaintiff is unable to frame these occurrences vis-a-vis a constitutive policy or practice, the Amended Complaint's litany of discrete allegations fails to establish a continuing violation. *See, e.g., Page v. New York City Off-Track Betting Inc.*, 1993 U.S. Dist. LEXIS 14756 at *10 (S.D.N.Y. Oct 21, 1993) ("Since [plaintiff] has alleged only discriminatory treatment ... and not discrimination though a discriminatory policy or mechanism, she may not avoid the 300 day limitations period") (internal citation omitted). Indeed, the temporal discontinuity between the incidents alleged by Mr. Bailey is fatal to a continuing violation claim. *See, e.g., Quinn v. Greentree Credit Corp.*, 159 F.3d 759, 766 (2d Cir.1998) (holding that gaps of one or more years between alleged incidents break "the asserted continuum of discrimination" and preclude finding of continuous violation). Moreover, the alleged incidents, in addition to being episodic and involving discrete and unrelated occurrences, involved different co-workers and managers in different locations.

In conclusion, and inasmuch as plaintiff does not present any evidence which might connect seemingly episodic occurrences and actions by different individuals to a controlling policy or practice, he cannot avail himself of the continuing violation doctrine. *See Crosland*, 140 F.Supp.2d at 308 (continuing violation doctrine inapplicable where "the [alleged] retaliatory acts were taken by different supervisors in different departments"). Plaintiff filed a charge alleging age and race discrimination with the NYSDHR on February 8, 1996. Thus, plaintiff's Title VII and ADEA claims arising more than 300 days before he filed his charge--i.e., claims arising

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d                                                    Page 11
(Cite as: 2003 WL 21108325, *9 (S.D.N.Y.))

before April 15, 1995--are time-barred and must be dismissed. Defendant's motion for summary judgment with respect to these claims is GRANTED.

V. NYSHRL *Claims and Election of Remedies*

**\*10** [2] Under the NYSHRL, an individual who files a complaint with the NYSDHR is barred from filing a lawsuit for the same cause of action. *See* N.Y. Exec. Law § 297(9) ("[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages ... unless such person has filed a complaint hereunder [with the NYSDHR] or with any local commission on human rights"). *See also Wiley v. Citibank, N.A.,* 2000 U.S. Dist. LEXIS 799, at \* 9 (S.D.N.Y. Jan. 28, 2000) (Batts, J.) ("Because plaintiff elected to pursue her Executive Law and Administrative Code claims before the [NYS]DHR and the subsequent dismissal of her action was not a dismissal for administrative convenience, the court is without jurisdiction to hear such claims").

In the instant case, plaintiff filed a charge alleging race and age discrimination with the NYSDHR on February 8, 1996. Plaintiff does not dispute that he filed a complaint with the NYSDHR or that the NYSDHR issued a Determination and Order finding No Probable Cause to believe that Colgate had engaged in any discriminatory practices.

Plaintiff claims that since he did not receive a copy of the NYSDHR administrative finding, "there are questions of material fact related to its issuance and receipt." *See* Opp. Brief at 18. Plaintiff's claim of ignorance concerning the NYSDHR decision is of no legal consequence. *See, e.g., Kirkland v. City of Peekskill,* 651 F.Supp. 1225, 1231 n. 2 (S.D.N.Y.1987) (citation omitted) ("[T]he New York State Court of Appeals has ... held that the very filing of a complaint with the NYSDHR, even without any action on the part of the agency, constitutes a binding election of remedies which precludes the plaintiff from commencing any action in court based on the same incident, unless the complaint is dismissed on the grounds of administrative convenience. Hence, the NYSDHR's dismissal ... was final and entitled to preclusive effect.") *aff'd,* 828 F.2d 104 (2d. Cir.1987) (internal quotation and citation omitted).

In light of the foregoing, plaintiff's age and race claims filed with the NYSDHR are dismissed pursuant to the election of remedies doctrine. Defendant's motion for summary judgment with respect to these claims is hereby GRANTED.

VI. *Time Bar:* Section 1981 *Discrimination and Retaliation Claims*

Plaintiff brings claims of race discrimination and retaliation pursuant to 42 U.S.C. § 1981. Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." Since Section 1981 does not have a statute of limitations, courts considering claims under the statute have historically applied the personal injury statute of limitations of the forum state. Defendant argues that in New York, Section 1981 claims are subject to a three-year statute of limitations. *See, e.g., Wilson v. Fairchild Republic Co., Inc.,* 143 F.3d 733, 738 n. 5 (2d Cir.1998) (statute of limitations of federal civil rights cases is three years, including Section 1981 claims). Accordingly, defendant argues that plaintiff's Section 1981 claims must be dismissed as time-barred.

**\*11** [3] Plaintiff first alleged his Section 1981 claims in the Amended Complaint, which was filed on October 9, 2001. In light of the putatively applicable statute of limitations, plaintiff urges the court to adopt a four-year limitations period pursuant to the 'catch-all' statute of limitations period provided by Congress's enactment on December 1, 1990 of 28 U.S.C. § 1658 ("Section 1658"). Section 1658 provides in relevant part: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of this section may not be commenced later than 4 years after the cause of action

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21108325, *11 (S.D.N.Y.))

Page 12

accrues." 28 U.S.C. § 1658(a). Plaintiff cites the outlier case of *Turner v. National R.R. Passenger Corp.*, 2002 WL 92862 (N.D.N.Y. Jan.23, 2002) in support of the proposition that a four-year statute of limitations ought to apply to the Section 1981 claims rather than the three-year period applied in this Circuit.

Plaintiff's position is contrary to the decisions of a majority of district courts which have addressed this issue, as well as decisions of the Third and Seventh Circuits. *See, e.g., Zubi v. AT & T Corp.*, 219 F.3d 220 (3d Cir.2000); *Jones v. R.R. Donnelley & Sons Company*, 305 F.3d 717, 2002 WL 31050947 (7th Cir.2002); *But see Harris v. Allstate Insurance Co.*, 300 F.3d 1183 (10th Cir.2002) (applying four-year statute of limitations).

Since the Court of Appeals in this Circuit has not yet ruled definitively on the issue of the effect of Section 1658 on the applicable limitations period, this court looks to other circuit courts and courts in this district for guidance. Courts in the Southern District have generally assumed that the three-year statute of limitations still applies. *See, e.g., Powell v. Consolidated Edison Co. of New York, Inc.*, 2001 WL 262583 (S.D.N.Y. March 13, 2001) (Lynch, J.). This court agrees with the careful reasoning of the Third and Seventh Circuits on the issue and thus concludes that Section 1658 does not apply to plaintiff's claims. This interpretation is, in the words of a sister circuit, "most consonant with the purpose of § 1658 and the balance struck by Congress between the need for uniformity and the need to preserve settled expectations." *See Jones*, 305 F.3d 717, 2002 WL 31050947 at *8. Under this formulation,

> [w]hen an Act of Congress passed after December 1, 1990, amends a statute existing before that date, as opposed to creating a new law without reference to previously existing statutory language, all claims accruing after passage of the amendment arise under an Act of Congress enacted before December 1, 1990, without regard to whether an identical claim arising earlier could have been successfully pursued under the prior statute.

*Zubi*, 219 F.3d at 222. Thus, it is "only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies." *Id.* at 225.

Accordingly, plaintiff's discrimination and retaliation claims brought pursuant to Section 1981 are time barred. Defendant's motion for summary judgment with respect to these claims is hereby GRANTED.

VII. *Exhaustion of Administrative Remedies:* Title VII *Retaliation Claim*

*12 Defendant argues that plaintiff's Title VII retaliation claim must be dismissed because he failed to assert a retaliation claim in either his NYSDHR Charge or his EEOC Affidavit.

Before commencing a Title VII action, a plaintiff must exhaust his administrative remedies. *See Butts*, 990 F.2d at 1401 ("[w]hen a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred.... This exhaustion requirement is an essential element of Title VII's statutory scheme"). Failure to exhaust administrative remedies defeats the purpose of the statutory notice provision, which is " 'to encourage settlement of discrimination disputes through conciliation and voluntary compliance." ' *Butts*, 990 F.2d at 1401 (quoting *Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir.1985)). Courts may only hear claims that were raised in the underlying administrative charge. *See Kelly v. American Museum of Natural History*, 1990 U.S. Dist LEXIS 15363 at *6 (S.D.N.Y. Sept. 30, 1999). Thus, "courts in this district routinely dismiss claims of discrimination when the exhaustion requirement is not satisfied." *Connelly v. West*, 2001 WL 102350 at *5 (S.D.N.Y. Feb 7, 2001) (listing cases). *See also Waterman v. New York Tel. Co.*, 1984 U.S. Dist. LEXIS 19093 at *15-16 (S.D.N.Y. Feb. 28, 1984).

Whereas Title VII's filing requirements are not jurisdictional prerequisites, they may be waived in certain situations where equity requires. *See Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2d Cir.1986) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397-98, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); (*Adames v. Mitsubuishi Bank, Ltd.*, 751 F.Supp. 1565, 1570

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d                                                                Page 13
(Cite as: 2003 WL 21108325, *12 (S.D.N.Y.))

(E.D.N.Y.1990)). Under some circumstances, courts may hear claims "reasonably related" to, but not expressly alleged in, the underlying administrative charge. In *Butts*, the Second Circuit recognized three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge "that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Little v. National Broadcasting Company*, 210 F.Supp.2d 330, 373 (S.D.N.Y.2002). First, a claim in a judicial action may be "reasonably related" to a claim in an EEOC charge "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." ' *Butts*, 990 F.2d at 1402 (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). Second, an unasserted claim is "reasonably related" to an EEOC charge if the "claim is one alleging retaliation by an employer against an employee for filing ... [the underlying] charge." *Butts*, 990 F.2d at 1402. Third, an unasserted claim may be raised for the first time in court where the claim alleges further incidents of discrimination "carried out in precisely the same manner alleged in the ... [underlying] charge." *Butts*, 990 F.2d at 1402-03.

*13 The first category of "reasonably related" claims is "essentially an allowance of loose pleading." *Id*. As the Second Circuit explained:

> Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.
> *Id*. (internal citations omitted).

The claim not included in the EEOC charge will usually not be seen as reasonably related "where the facts in the original EEOC charge do not sufficiently apprise the EEOC that another type of discrimination claim lurks in the background." *Alonzo v. Chase Manhattan Bank*, 25 F.Supp.2d 455, 458 (S.D.N.Y.1998). *See Norris v. Northrop Gunman Corp.*, 1999 WL 79666 at *18- 19 (E.D.N.Y. Feb.17, 1999) ("the relevant inquiry ... is whether the EEOC could reasonably be expected to investigate [plaintiff's claims] based on the allegations contained in his charge"). Accordingly, in order to determine if a claim satisfies this test, a court must consider "whether the allegations in the EEOC charge, as a whole, would reasonably lead the agency to investigate both grounds." *Little*, 210 F.Supp.2d at 373.

[4] It is true that plaintiff failed to make explicit reference to retaliatory conduct on the part of Colgate in his NYSDHR and EEOC charges. Of course, this alone does not defeat the contention that plaintiff's Title VII retaliation claim is reasonably related to the claims brought in his administrative charge. Indeed, "it is well settled that the court should not look 'merely to the four corners of the often inarticulately framed charge,' but must consider the possible scope of any investigation reasonably flowing from the charge." *Melendez v. Int'l Svc. Sys., Inc.*, 1999 WL 187071, at *6 (S.D.N.Y. Apr.6, 1999) (quoting *Dargento v. Bally's Holiday Fitness Ctrs.*, 990 F.Supp. 186, 193 (W.D.N.Y.1997). Thus, "it is the substance of the charge and not its label that controls." *Alonzo*, 25 F.Supp.2d at 458.

Notwithstanding this generous standard of pleading, the court, cognizant that this is a close issue, finds that plaintiff's Title VII retaliation claim is not reasonably related to the allegations in the underlying administrative charge. *See, e.g., Melendez v. Int'l Serv. Sys.*, 1999 WL 187071 (S.D.N.Y. Apr.1, 1999) (Batts, J.) (dismissing retaliation claim not included in pro se administrative complaint, noting that "the retaliation claim is based on a 'wholly different' type of discrimination that would not reasonably fall within the scope of the EEOC investigation"). Plaintiff's EEOC charge, in addition to making no reference to retaliatory conduct on the part of defendant, is bereft of any "factual

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21108325, *13 (S.D.N.Y.))

Page 14

allegation from which one could infer that plaintiff is asserting retaliation." *Melendez,* 1999 WL 187071 at *7. Plaintiff made no allegation that he had engaged in any kind of protected activity which was met by retaliatory activity on the part of his employer. *See Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1997) (to state a claim for retaliation, plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action). [FN5] Rather, alleging that Colgate has historically cultivated and maintained a culture which is hostile to black employees, plaintiff ultimately notes in his EEOC charge that he "believe[s] that [he] was terminated from [his] position because of [his] race ... and [his] age...." *See* Bailey EEOC Aff. at 2. Plaintiff's own submissions appear to confirm that his administrative filings were not suggestive of claims of retaliation. See Pl.'s Opp. Br. at 1, 2 ("Ismail Bailey charged defendant with an unlawful discriminatory act related to employment on the basis of Age and Race....").

> FN5. The court notes that plaintiff would probably fail to make out a *prima facie* case for retaliation insofar as he appears to be unable to articulate a non-conclusory nexus between a protected activity and an adverse employment action. Whereas the court does not ultimately need to reach the merits of this issue, though, it does not.

*14 Plaintiff's claim is not salvaged by either of the two remaining exceptions to the Title VII exhaustion requirement, which are inapposite here. Accordingly, defendant's motion for summary judgment with respect to plaintiff's Title VII retaliation claim in hereby GRANTED.

VIII. *Time Bar:* NYSHRL *Retaliation Claim*

Defendant argues that plaintiff's complaint fails to allege a single incident of retaliation within three years of filing his complaint. Thus, defendant argues, plaintiff's claim is time-barred and defendant ought to be granted judgment as a matter of law. Plaintiff does not respond to this assertion. [FN6]

> FN6. The court notes that there are a number of glaring holes in plaintiff's submissions which reflected a substandard level of representation by plaintiff's counsel. In light of the significance of the allegations, the court carefully endeavored to follow plaintiff's arguments and the inferences they raised, the quality of their expression notwithstanding.

Plaintiff elected to pursue his NYSHRL race and age discrimination claims before the NYSDHR. He did not, as the court observed above, pursue a retaliation claim before the NYSDHR. Plaintiff may properly assert a NYSHRL retaliation claim in this action only to the extent that it is not barred by the applicable three-year statute of limitations. *See Petrowich v. Chemical Bank,* 98 A.D.2d 318, 324, 470 N.Y.S.2d 599, 604 (1st Dep't 1984) ("The [NYSHRL] has been governed by the three-year statute of limitations and plaintiff is barred, therefore, from asserting any claims ... prior to [three years ago]").

[5] The court finds that plaintiff's NYSHRL retaliation claim is time-barred. Plaintiff first alleged his NYSHRL retaliation claim in his Amended Complaint on October 9, 2001. *See* Am. Compl. ¶¶ 105-06. However, the Amended Complaint fails to allge an incident of retaliation within three years of the filing. [FN7] Accordingly, defendant's motion for summary judgment with respect to plaintiff's NYSHRL retaliation claim is hereby GRANTED.

> FN7. Defendant notes that even if the limitations period is calculated from March 9, 1999, the date that plaintiff filed his original *pro se* complaint, the claim would still be time-barred, as the *pro se* complaint is likewise devoid of allegations regarding incidents within the limitations period.

IX. *Timely* Title VII *and* ADEA *Discrimination Claims*

A. Age Discrimination Claims

Under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d                                                          Page 15
(Cite as: 2003 WL 21108325, *14 (S.D.N.Y.))

an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The framework for establishing a *prima facie* case of age discrimination under the ADEA is the same as that for establishing a prima facie case of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001). Thus, in determining whether a complainant has made out a *prima facie case* under Title VII, district courts must apply the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (hereinafter *"McDonnell Douglas"* ). In addition, analysis of age discrimination claims under the NYSHRL is identical to analysis under the ADEA. *See, e.g., Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 (2d Cir.1997). Thus, if Bailey's claims under the NYHRL survived, they would "rise or fall with the federal ADEA claim." *Ferrell v. Leake & Watts Services, Inc.*, 2002 WL 31856816 (S.D.N.Y. Dec.20, 2002). *See also Wanamaker,* 108 F.3d at 276 ("a district court may dismiss claims brought under the New York State Human Rights Law, on the ground that the plaintiff failed to establish a claim under the ADEA").

*15 Under the familiar analysis, if the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant, who must then proffer a legitimate, non-discriminatory reason as to why "the plaintiff was rejected, or someone else was preferred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (internal quotations omitted). The defendant does not need to show that the articulated reason was the true motivation behind the decision; rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff." *Burdine,* 450 U.S. at 255. "Any legitimate, non-discriminatory reason will rebut the presumption triggered by the *prima facie* case." *Fisher,* 114 F.3d at 1334-36. The defendant can dispose of this burden by advancing admissible evidence in support of a nondiscriminatory basis for its actions. *See Burdine,* 450 U.S. at 255; *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995). "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255.

Once the defendant articulates a neutral reason for his actions, the plaintiff must prove by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106 (internal quotations omitted). At this stage of the inquiry, the plaintiff must also satisfy the ultimate burden in the case: the burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *See Fisher,* 114 F.3d at 1336. Of course, at the summary judgment stage, the plaintiff does not need to prove intentional discrimination; rather, "[p]laintiff may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination." *Sorlucco v. New York City Police Dep't,* 888 F.2d 4, 7 (2d Cir.1989).

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148. Importantly, however, such a showing is by no means always adequate to survive summary judgment because "proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that plaintiff's proffered reason ... is correct." *Id.* After *Reeves,* the court must examine the entire record in each case to "determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff ." *Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000). Showing that the employer's proffered explanation for termination is not worthy of belief is one form of circumstantial

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d
(Cite as: 2003 WL 21108325, *15 (S.D.N.Y.))

Page 16

evidence that is probative of intentional discrimination, and it may or may not be sufficiently persuasive to preclude summary judgment depending upon the specific facts of each individual case.

1. *Prima facie* case

**\*16** [6] In order to establish a *prima facie* case of age discrimination under *McDonnell Douglas*, a plaintiff must demonstrate (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, "such as the fact that plaintiff was replaced by someone 'substantially younger.' " *Roge*, 257 F.3d at 168 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 516 U.S. 308, 313 (1996)). The burden on the plaintiff of presenting a *prima facie* case of discrimination under *McDonnell Douglas* is "minimal." *James*, 233 F.3d at 153 (internal quotations omitted).

However, Mr. Bailey has difficulty meeting this modest burden. Plaintiff alleges that he was discriminated on the basis of age when he was not assigned to work on the new SAP project in New Jersey and was terminated on May 23, 1995. According to plaintiff, "[t]he fact that Defendant continued to employ Carol Smith and Greg Cucco, both of whom had worked with [plaintiff] on the Ross Project in Puerto Rico, and both being white and younger than Plaintiff, suggests that race and age were motivating factors in Plaintiff losing his job." *See* Opp. Mem. at 10. First, it is unclear whether plaintiff was, in fact, qualified for the job in question. Mr. Bailey claims that he was; Colgate claims that he was not. Both parties refer to plaintiff's job performance evaluations pursuant to their positions. Plaintiff has failed to explain how the skills, knowledge, and experience that he gained throughout his tenure at Colgate prepared him for the duties of personnel assigned to the SAP project. He has failed to suggest how, for example, his seemingly successful experience with the Ross project could lead the court to infer that he was qualified for the SAP, other Grade 14 positions, or a Grade 15 position. The court pauses, however, to consider whether a job performance evaluation of Mr. Bailey's work on the Ross might give rise to such an inference. This begs the question, then, of why no such performance evaluation was ever taken. This is an interesting question.

Without more, however, the employment decisions to which plaintiff refers do not necessarily give rise to the inference embraced by the plaintiff. Mr. Bailey fails to provide any evidence whatsoever which might give rise to this inference. Indeed, Mr. Bailey disavowed having any knowledge of Mr. Cucco's and Ms. Smith's ages, job qualifications, or performance evaluations. *See* Bailey Tr. at 65, 125, 478. In fact, the record shows that Mr. Cucco is actually older than Bailey. Plaintiff fails to show that he and Mr. Cucco and Ms. Smith were similarly situated. Plaintiff can point to no conversations with his employers or any significant decision makers at Colgate, or any other evidence, that suggests that consideration of his age entered into the calculus when the relevant parties (1) offered him a Grade 12 position and, when he subsequently refused that offer, (2) terminated his employment at Colgate.

**\*17** Plaintiff's conclusory identification of age discrimination as a but- for cause of his termination and the paltry evidence which he presents in furtherance of that claim are insufficient to defeat a motion for summary judgment. *See Tappe v. Alliance Capital Mgmt., L.P.*, 177 F.Supp.2d 176, 185 (S.D.N.Y.2001) ("To hold that [plaintiff] has stated a claim by simply alleging that he was fired (and other employees were not) would render the first step of the test established by *McDonnell Douglas* nothing more than a formality and, in effect, shift the burden to the employer to give a non-discriminatory reason every time an employee's job was terminated").

2. *Defendant's Presentation of a Non-Discriminatory Motive*

[7] Assuming, quite charitably, that Bailey

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



x

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21108325, *17 (S.D.N.Y.))

Page 17

were deemed, however tenuously, to have met the minimal burden and to have pleaded a *prima facie* case, the burden would shift to the defendant to present a non-discriminatory reason for the adverse employment action. *Roge*, 257 F.3d at 168. Defendant has done so, claiming that plaintiff was simply incapable of satisfactorily discharging his duties at the Grade 14 level. The burden thus shifts again.

*3. Plaintiff's Presentation of a Discriminatory Motive*

[8] Whereas Colgate has articulated a permissible, age-independent motivation for what the court will assume to have been an adverse employment actions of demoting and ultimately terminating Mr. Bailey, the presumption of discrimination vanishes, and the burden shifts back to the plaintiff to prove that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Roge*, 257 F.3d at 168. It is well-settled under *McDonnell Douglas* that "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Holz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 78 (2d Cir.2001) (citations omitted). Similarly, under the ADEA a plaintiff does not need to "prove that age was the only or even the principal factor in the adverse employment action, but only that age was at least one of the motivating factors in the decision." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir.2000); *see also Ferrell v. Leake & Watts Services, Inc.*, 2002 WL 31856816 at *6 (S.D.N.Y. Dec.20, 2002) (quoting *Carlton*).

This, however, the plaintiff cannot, or simply does not do.

Plaintiff makes no meaningful attempt to establish through the evidence that age was at least one of the motivating factors in Colgate's decisions with respect to his employment. He is unable to refute Colgate's legitimate, non-discriminatory reason for its employment decisions i.e., that Colgate determined that plaintiff was not qualified to work at a Grade 14 level and that he had rejected an offer to work at a Grade 12 level as a Staff Accountant. Plaintiff offers no evidence to support a conclusion that Colagate's proffered motivation was pretextual. Plaintiff does not even take the time to present evidence concerning the ages or other relevant characteristics of Mr. Cucco or Ms. Smith.

*18 Conscious of the fact that Mr. Bailey is relying in good faith upon the efforts and abilities of counsel, the court has very closely and carefully examined all of the evidence presented by Bailey, including lengthy deposition transcripts, evaluations of his work over the course of his employment at Colgate, and the circumstances of his dismissal. After careful consideration, the court concludes that no reasonable jury could find that Colgate was motivated, in whole or in part, by Bailey's age. Accordingly, defendant's motion for summary judgement on this issue is GRANTED.

*B. Race Discrimination Claims*

Mr. Bailey alleges that he was discriminated against on the basis of race when the relevant parties at Colgate did not allow him to apply for a Grade 15 position at the company; when they offered him a Grade 12 position, which is of a lower grade than the Grade 13 position which he then held; and when they ultimately terminated his employment. Mr. Bailey brings these race discrimination claims under Title VII.

*1. Prima facie Case*

Courts apply the same *McDonnell Douglas* burden shifting analysis to claims of racial discrimination brought under Title VII. *See, e.g., Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir.1996). Thus, in order to make a *prima facie* case of race discrimination, Mr. Bailey must show that "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21108325, *18 (S.D.N.Y.))

Page 18

(iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination...." *Roge,* 257 F.3d at 168.

[9] While it appears that Colgate concedes that Mr. Bailey is a member of a protected class, the defendant again challenges Mr. Bailey's ability to satisfy the other elements of a *prima facie* case. As the discussion above indicates, plaintiff has not gone very far to establish that he was qualified for a Grade 15, Grade 14, or even a Grade 13 finance-related position at Colgate. For example, the job evaluation excerpts provided above reflect plaintiff's weakness, detected by different supervisors, with respect to work duties related to finance and financial analysis. In any event, plaintiff does not explain why any success that he enjoyed in Grade 13 positions might have prepared or qualified him for a Grade 15 position. Just about all that plaintiff does is point to his evaluations and assert that he is qualified.

More importantly, plaintiff fails to show that any adverse employment actions occurred under circumstances giving rise to an inference of discrimination. Plaintiff fails, for example, to establish that those who made decisions with respect to his employment at Colgate knew of his involvement in the African American Forum. He fails to establish that those who made decisions with respect to his employment at Colgate evinced any hostility toward black employees or toward him because of his race. He concludes, in light of his disagreement with Colgate's decisions with respect to his employment, that those decisions were predicated upon, motivated by, or related to his racial identity. But he presents no evidence in furtherance of this conclusion.

2. *Defendant's Presentation of a Non-Discriminatory Motive*

*19 [10] Again, even assuming, quite charitably, that Bailey were deemed, however tenuously, to have met the minimal burden and to have pleaded a *prima facie* case, the burden would shift to the defendant to present a non-discriminatory reason for the adverse employment action. *Roge,* 257 F.3d at 168. Defendant has done so, credibly claiming that plaintiff was simply incapable of satisfactorily discharging his duties at the Grade 14 level. The burden thus shifts again.

3. *Plaintiff's Presentation of a Discriminatory Motive*

[11] Here again Mr. Bailey fails to meet his burden. Mr. Bailey fails to present evidence that the decision to effectively demote him was based on his race. He has failed to present evidence that any of his negative performance evaluations, some of which were completed by African American superiors at Colgate, were tainted by some vulgar consideration of his race. He has failed to sufficiently establish a connection between his level of professional skill and knowledge and the duties which inhere in a Grade 15 position at Colgate, or any position for that matter. He has failed to demonstrate or cite any racist utterances, attitudes, or tendencies in those individuals who were responsible for making decisions related to his employment at Colgate, or in those people who may have influenced their decisions. Mr. Bailey's superiors at Colgate felt that he wasn't performing with sufficient success in a Grade 14 finance-related capacity. Mr. Bailey presents no evidence giving rise to an inference that its decision to demote him was motivated by race, racism, prejudice, or discrimination of any kind. When Mr. Bailey refused to accept the firm's offer of a Grade 12 position, without an immediate drop in salary, Colgate terminated his employment. Mr. Bailey comes forward with no evidence that this decision was motivated by negative feelings vis-a-vis his racial identity. His claim of race-based discrimination must be dismissed. Colgate's motion for summary judgment on this issue is GRANTED.

X. Race-Based Hostile Work Environment.

[12] Defendant insists that plaintiff has timely raised only one hostile work environment claim: that in 1995, after he was notified of his termination, Mr. Bailey overheard a co-worker use the word "nigger"

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d
(Cite as: 2003 WL 21108325, *19 (S.D.N.Y.))

Page 19

during a conversation in an office bathroom.

In *Harris v. Forklift Systems,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), a sexual harassment case, the Supreme Court held that a Title VII hostile environment claim will succeed only if the conduct at issue is so "severe or pervasive" as to create an "'objectively' hostile or abusive work environment," and where the victim "subjectively perceive[s] the environment to be abusive." *Id.* at 21-22. There is no dispute that Bailey subjectively perceived the environment at Colgate to be hostile to him as a black person. If there is a timely claim to consider, the question is whether the environment at Colgate was "objectively" hostile. Bailey's allegations "should thus be evaluated to determine whether a reasonable person who is the target of discrimination would find the working conditions so severe as to alter the terms and conditions of employment for the worse." *Richardson v. New York State Dep't of Correctional Service,* 180 F.3d 426, 436 (2d Cir.1999) (citing *Harris* at 21). In order to avoid summary judgement on a hostile work environment claim, a plaintiff must establish that (1) he was subjected to harassment that was so severe and pervasive as to alter the conditions of his employment; and (2) there is a specific basis for imputing the conduct to Colgate. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62-63 (2d Cir.1992). A plaintiff must produce evidence that "the workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000) (quoting *Harris,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations omitted)); *Morgan* at 2074 (same). "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Carrero v. New York City Hous. Auth.,* 890 F.2d 569, 577 (2d Cir.1989) (internal citation omitted).

*20 Subsequent to this matter being fully briefed, the Supreme Court issued an opinion in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), addressing hostile work environment claims under Title VII. Whereas plaintiff asserted at the hearing on this matter that this case was dispositive of his hostile work environment claims against Colgate, the court allowed the parties the opportunity to brief this discrete issue.

In *Morgan,* in an opinion by Justice Thomas, the Court acknowledged that hostile environment claims are different in kind from claims alleging discrete acts inasmuch as they involve repeated conduct. *Morgan,* 122 S.Ct. at 2073. A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice." ' *Morgan* at 2074 (citing 42 U.S.C. § 2000e-5(e)(1)). The timely filing provision, according to the Court,
only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.
*Id.*

Courts examining hostile work environment claims look to "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan* at 2074 (quoting *Harris,* 510 U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." ' *Clark County School District v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). "A plaintiff must demonstrate that a series of incidents allegedly constituting a hostile work environment were 'sufficiently continuous and concerted' to alter the conditions of his or her

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

