# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BASIL YOUNG, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:03CV0216(MRK) |
| | : | |
| v. | : | |
| | : | |
| COOPER SURGICAL, INC., | : | |
|     Defendant. | : | June 7, 2004 |

## LOCAL RULE 56(b)2 STATEMENT

**A.  Material Facts Asserted by the Defendants**

1.  Admit.

2.  Admit.

3.  Admit.

4.  Admit.

5.  Admit.

6.  Admit.

7.  Admit.

8.  Admit.

9.  Deny to the extent that the Quality Assurance Inspector "takes measurements as directed on what is called an Incoming Inspection Procedure Sheet". The Incoming Inspection Procedure Sheet is not the sole document which the Quality Assurance Inspector must review before performing his inspection. The defendant's SOP 00001 requires the Quality Assurance Inspector to access the entire file associated with the part to determine the method of instruction he is to employ. This includes the blueprint of the particular part prepared by the engineer who designed the part. "SOP 00001" specifies, "[p]rior to inspection, the inspector or technician will retrieve the file folder associated with the component or finished product to be inspected. The folders are located in either a component or finished product file cabinet, ordered by numeric or alphabetic part number." (Exhibit 3, (Young Tr. Exhibit 17)). Additionally, "SOP 00001" requires, "[t]he inspector or technician will then conduct inspection and testing according to the file instructions." (Exhibit 3, (Young Tr. Exhibit 17)).

10. Deny to the extent that the defendant implies that the Quality Assurance Inspector is only to review the Incoming Inspection Procedure Sheet to determine the equipment and method to be used in performing the measurement. If the Incoming Inspection Procedure Sheet is outdated or inconsistent with the quality assurance file folder associated with the particular part, the Quality Assurance Inspector is required to revise the Incoming

Inspection Procedure Sheet to conform to the specifications found in the quality

assurance folder.  Young, Tr.  112 – 115.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Deny.  Young, Tr.  102.

20. Deny.  Young, Tr.  142 - 147, 234 - 242.

21. Deny.  Young, Tr.  142 - 147, 234 - 242.

22. Deny.  Young, Tr.  142 - 147, 234 - 242.

23. Deny.  The plaintiff brought an inconsistency in the specifications of the Incoming

Inspection Procedure Sheet with the specifications in the quality assurance folder.  He

revised the Incoming Inspection Procedure Sheet to conform to the engineering

requirements, and submitted it to Flynn for review and approval.  Young, Tr. 111 – 115, 136, 137.

24. Admit.

25. Admit.

26. Admit.  Although the plaintiff admits that the defendant accused him of falsifying records, the plaintiff adamantly denies the accusation.  Young, Tr. 105 – 137, 147, 241, 305.

27. Admit.  Although the plaintiff admits that the defendant accused him of falsifying records, the plaintiff adamantly denies the accusation.  Young, Tr. 105 – 137, 147, 241, 305.

28. *There is no number 28.*

29. Deny to the extent that the defendant describes the dispute between Freese and the plaintiff as a verbal altercation.  Freese wrongfully accused the plaintiff of falsifying company records.  The plaintiff denied her accusation, and then proceeded to make a complaint regarding the dispute with the defendant's human resources department. Young, Tr. 249 - 252, 260 - 262.

30. Deny.  Young, Tr.  252.

31. Deny.  Flynn berated the plaintiff, yelling with such anger at the plaintiff that he spewed mucus on the plaintiff.  "When I complained to him, for instance, about what had happened with Jeanette Freese, the fact that she was accusing me of falsifying an inspection report, he very rudely yelled at me and said that I was not listening to a senior employee...There was a point where mucus from his mouth went in my face, and just total disrespect and contempt I felt from him.  In other words, it didn't matter what I said to him, how I tried to explain what had happened; he would take the side of others."  Young, Tr.  216.  "I think Tom Flynn, who was not far away, may have overheard the discussion.  And so he immediately came towards me and was reprimanding me for telling Jeanette not to accuse me of falsifying an inspection report.  He began to say that she was the senior employee and I should not speak to a senior employee that way and so on.  And my statement to him simply was "Jeanette Freese is accusing me of falsifying an inspection report."  That was completely ignored.  Instead he was in my face yelling at me.  It was at that time when the mucus fell in my face, and I kind of squinted.  And from that point when I realized that I was not getting any -- an appropriate response from my supervisor, I decided to go to HR to complain of the incident."  Young, Tr.  250, 251.

32. Deny.  Young, Tr.  216, 250, 251.

33. Objection.  The defendant attempts to introduce unverified statements of Jeanette Freese and Mr. Rutowski through the affidavit of Joanne Augustine.  As such, the statements are inadmissible hearsay.  L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  The unverified statements of witnesses in the affidavit of another witness are an improper circumvention of the requirements of the local rules.  The statements are not contained in the affidavit of the witness to whom the statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial.  "The principles governing admissibility of evidence do not change on a motion for summary judgment.  Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.'  Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted).  Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v.*

*Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997). See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp.,* 157 F. Supp. 2d 202, 208 (D.Conn. 2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated. See, e.g. *Hollander v. American Cyanamid Co*., 999 F. Supp. 252, 255-56 (D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y*., 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).)".

34. Objection. The defendant attempts to introduce unverified statement of Jeanette Freese through the affidavit of Joanne Augustine. As such, the statements are inadmissible

hearsay.  L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  The unverified statements of witnesses in the affidavit of another witness are an improper circumvention of the requirements of the local rules.  The statements are not contained in the affidavit of the witness to whom the statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial.  "The principles governing admissibility of evidence do not change on a motion for summary judgment.  Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.'  Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted).  Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to

present evidence to a court on summary judgment does not require the court to admit

irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-

76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for

summary judgment is subject to the same rules that govern the admissibility of evidence

at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir.  1997).  See also *Barlow v.*

*Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles

concerning admissibility of evidence do not change on a motion for summary judgment.

*Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp*.,

157 F. Supp. 2d 202, 208 (D.Conn. 2001).  Accordingly, a motion to strike is appropriate

if documents submitted in support of a motion for summary judgment contain

inadmissible hearsay, conclusory statements, are incomplete, or have not been properly

authenticated.  See, e.g. *Hollander v. American Cyanamid Co.,* 999 F. Supp. 252, 255-56

(D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y.*, 1998 U.S. Dist. LEXIS 132, 1998 WL 9376

at *4 (S.D.N.Y. 1998).)".

35. Objection.  The defendant attempts to introduce unverified statement of Jeanette Freese

through the affidavit of Joanne Augustine.  As such, the statements are inadmissible

hearsay.  L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a

Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a

witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." The unverified statements of witnesses in the affidavit of another witness are an improper circumvention of the requirements of the local rules. The statements are not contained in the affidavit of the witness to whom the statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial. "The principles governing admissibility of evidence do not change on a motion for summary judgment. Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.' Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted). Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-

76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997). See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp*., 157 F. Supp. 2d 202, 208 (D.Conn. 2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated. See, e.g. *Hollander v. American Cyanamid Co.,* 999 F. Supp. 252, 255-56 (D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y*., 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).)".

36. Objection. The defendant attempts to introduce unverified statement of Jeanette Freese through the affidavit of Joanne Augustine. As such, the statement is inadmissible hearsay. L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." The unverified statements of witnesses in the affidavit of another

witness are an improper circumvention of the requirements of the local rules. The statements are not contained in the affidavit of the witness to whom the statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial. "The principles governing admissibility of evidence do not change on a motion for summary judgment. Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.' Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted). Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence

at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997). See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp*., 157 F. Supp. 2d 202, 208 (D.Conn. 2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated. See, e.g. *Hollander v. American Cyanamid Co*., 999 F. Supp. 252, 255-56 (D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y.,* 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).)".

37. Objection. The defendant attempts to introduce unverified statement of Mr. Rutowski through the affidavit of Joanne Augustine. As such, the statement is inadmissible hearsay. L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." The unverified statements of witnesses in the affidavit of another witness are an improper circumvention of the requirements of the local rules. The statements are not contained in the affidavit of the witness to whom the statement is

attributed, and the statements, standing alone, would not be admissible as evidence at trial.  "The principles governing admissibility of evidence do not change on a motion for summary judgment.  Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.'  Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted).  Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.')." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.  1997).  See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles

concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp.*, 157 F. Supp. 2d 202, 208 (D.Conn. 2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated. See, e.g. *Hollander v. American Cyanamid Co.,* 999 F. Supp. 252, 255-56 (D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y.*, 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).)".

38. Objection. The defendant attempts to introduce unverified statement of Jeanette Freese and Mr. Rutowski through the affidavit of Joanne Augustine. As such, the statements are inadmissible hearsay. L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." The unverified statements of witnesses in the affidavit of another witness are an improper circumvention of the requirements of the local rules. The statements are not contained in the affidavit of the witness to whom the statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial. "The principles governing admissibility of evidence do not change on a motion for

summary judgment.  Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.'  Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted).  Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir.  1997).  See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp*.,

157 F. Supp. 2d 202, 208 (D.Conn. 2001).  Accordingly, a motion to strike is appropriate

if documents submitted in support of a motion for summary judgment contain

inadmissible hearsay, conclusory statements, are incomplete, or have not been properly

authenticated.  See, e.g. *Hollander v. American Cyanamid Co*., 999 F. Supp. 252, 255-56

(D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y*., 1998 U.S. Dist. LEXIS 132, 1998 WL 9376

at *4 (S.D.N.Y. 1998).)".

39. The plaintiff denies that his complaint could not be substantiated.  Young, Tr. 249 - 252,

260 - 262.

40. Deny.  Young, Tr. 273 - 277, 307.

41. Deny. Young, Tr. 273 - 277, 307.

42.  Objection.  The defendant attempts to introduce unverified statement of Jeanette Freese

through the affidavits of Joanne Augustine and Thomas Williams.  As such, the

statements are inadmissible hearsay.  L.Civ. R. 56 (a) 3 requires "[e]ach statement of

material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific

citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or

(2) evidence that would be admissible at trial."  The unverified statements of witnesses in

the affidavit of another witness are an improper circumvention of the requirements of the

local rules.  The statements are not contained in the affidavit of the witness to whom the

statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial.  "The principles governing admissibility of evidence do not change on a motion for summary judgment.  Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.'  Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.'') (citation omitted).  Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir.  1997).  See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles

concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp.*, 157 F. Supp. 2d 202, 208 (D.Conn. 2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated. See, e.g. *Hollander v. American Cyanamid Co.*, 999 F. Supp. 252, 255-56 (D.Conn. 1998); *Dedyo v. Baker Eng'g N.Y.*, 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).)".

43. Deny. The defendant's have misrepresented the events leading up to the plaintiff's termination. Its assertion that a conflict resolution meeting took place on April 11, 2001 between the plaintiff, a co-employee, Jeanette Freese, Joanne Augustine, Thomas Flynn and Thomas Williams, during which meeting the plaintiff lost control of his emotions, is a deception. A meeting of no longer than ten minutes took place on April 11, 2001, at which time the plaintiff was informed he had been terminated. Present at that meeting were the human resources manager, Joanne Augustine, the director of the quality assurance division, Thomas Williams, the plaintiff's supervisor, Thomas Flynn, and the plaintiff's co-worker, Jeanette Freese. The plaintiff was informed at the very start of the meeting by Williams that the defendant had determined that a previous disagreement

between Freese and the plaintiff was the result of the plaintiff's misbehavior, and, as a result, his employment was being terminated. Young, Tr. 273 - 277.

44. Objection. The defendant attempts to introduce unverified statement of Jeanette Freese through the affidavit of Joanne Augustine. As such, the statement is inadmissible hearsay. L.Civ. R. 56 (a) 3 requires "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement...be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." The unverified statements of witnesses in the affidavit of another witness are an improper circumvention of the requirements of the local rules. The statements are not contained in the affidavit of the witness to whom the statement is attributed, and the statements, standing alone, would not be admissible as evidence at trial. "The principles governing admissibility of evidence do not change on a motion for summary judgment. Rule 56(e) provides that affidavits in support of and against summary judgment 'shall set forth such facts as would be admissible in evidence.' Fed. R. Civ. P. 56(e) (emphasis added); see also *Community of Roquefort v. William Faehndrich, Inc*., 303 F.2d 494, 498 (2d Cir. 1962) ('Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be

admissible in evidence.'') (citation omitted).  Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); see also *United States v. United States Gypsum Co.*, 340 U.S. 76, 85, 95 L. Ed. 89, 71 S. Ct. 160 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 175-76 (5th Cir. 1990) ('As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.')." *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir.  1997).  See also *Barlow v. Connecticut*, 2004 U.S. Dist. LEXIS 9237, 10-11 (U.S. Dist. , 2004) ("The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997); *Newport Elecs. v. Newport Corp*., 157 F. Supp. 2d 202, 208 (D.Conn. 2001).  Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated.  See, e.g. *Hollander v. American Cyanamid Co.,* 999 F. Supp. 252, 255-56 (D.Conn. 1998*); Dedyo v. Baker Eng'g N.Y.*, 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y. 1998).").

45. Deny to the extent that the defendant claims the plaintiff called his supervisor a liar. Young, Tr.  276, 277.  The plaintiff further denies that Williams terminated his employment at the conclusion of the meeting.  Williams started the meeting by informing the plaintiff that the plaintiff was being discharged.  Young, Tr.  275.

46. Deny to the extent that the defendant infers that he had not determined to terminate the plaintiff prior to the meeting with the plaintiff.  The plaintiff was not only informed of his termination at the onset of the meeting, Young, Tr.  275, but the defendant had an unemployment notice already prepared and delivered it to the plaintiff immediately on the conclusion of the meeting. Young, Tr. 277.  Exhibit 6.

47. Deny to the extent it infers the plaintiff was discharged for insubordination.  Young, Tr. 275.

**B.  Issues of Material Fact As To Which It is Contended There Is A Genuine Issue To Be Tried**

1. The plaintiff had an extensive background in quality assurance.  Young, Tr. 89.

2. The defendant did not provide the plaintiff with any training when it hired the plaintiff in its quality assurance department.  Young, Tr. 89, 91.

3. The plaintiff was not provided any orientation upon his permanent hiring by the defendant.  Young, Tr. 91.

4. The plaintiff was not provided with any job manuals or other documents that outlined the methodology to be employed in the performance of his job duties.  Young, Tr. 91.

5. The plaintiff knew how to perform his job duties based on his prior work experience in the quality assurance field, and the general assistance his two co-workers, Jeanette Freese and William Tanner provided him.  Young, Tr. 92.

6. Among the plaintiff's job tasks was to ascertain the correctness of the measurement of certain parts that were manufactured by the defendant.  Young, Tr. 92.

7. The methods employed by the defendant to determine the correctness of the measurement of the parts it manufactured was either by visual inspection performed by the plaintiff or the use of quality control instruments.  Young, Tr. 92.

8. The defendant had prepared manuals that described the method of inspection an employee should use when determining the quality of a part.  Young, Tr. 93.

9. The quality control forms prepared by the defendant identify the method of inspection as well as the tool to be used to make the inspection.  Young, Tr. 95, 96.

10. Every part manufactured by the defendant has a file which contains a QC 061 form which identifies the method of inspection, and if inspection tools are required, the tools to be used.  Young, Tr. 95, 96, 98.

11. The quality assurance tools to be employed in the inspection of a particular part are identified by the engineer who designed the part.  Young, Tr. 99.

12. On March 21, 2001, the defendant issued the plaintiff a written warning in which it falsely accused the plaintiff of falsifying an inspection report by not using a shadow graph instrument to measure the dimensions of a particular part, a "Delivery Connection Tube".  Young, Tr. 105.

13. The defendant falsely alleged "inspection form QC073 Rev 8/00 compiled for PN# 33590.  Dimension Falsified.  'Shadow Graph' required to perform task, Employee used 'visual' method."  (Exhibit 1, Employee Warning Notice, dated March 21, 2001).

14. The warning was issued to the plaintiff by his supervisor, Thomas Flynn, after the plaintiff had complained on February 2, 2001 to the director of the quality assurance division, Thomas Williams, that the plaintiff had been the subject of ongoing unfair treatment by Thomas Flynn on account of the plaintiff's race.  Young, Tr. 110, 142 – 147.

15. The warning stated that the "dimension result [was] falsified" by the plaintiff.  (Exhibit 1, Employee Warning Notice, dated March 21, 2001).

16. The statement, "falsification of company records is grounds for immediate termination", contained in the warning issued to the plaintiff, clearly implies that the plaintiff had

falsified a company record.  (Exhibit 1, Employee Warning Notice, dated March 21, 2001).

17. The record which the company claims the plaintiff falsified was the report of the plaintiff's inspection of the "Delivery Connector Tube" dated March 14, 2001.  (Exhibit 2).

18. The plaintiff did not falsify the report which he prepared to document the results of his inspection of the "Delivery Connector Tube".  (Exhibit 2 – Cooper Surgical Inspection Report); Young, Tr. 105 – 137.

19. The plaintiff truthfully reported that he conducted the inspection of the "Delivery Tube Connector" by visually inspecting the part.  (Exhibit 2 – Cooper Surgical Inspection Report); Young, Tr. 105 – 137.

20. On the report of his inspection of the "Delivery Tube Connector", the plaintiff accurately states that the sample size was 8, the inspector was B. Young (the plaintiff), and the method of inspection was "visual".  (Exhibit 2 – Cooper Surgical Inspection Report).

21. As the record of the plaintiff's inspection of the "Delivery Tube Connector" indicates, the plaintiff inspected two lots of 8 units of the "Delivery Tube Connector"; one inspection was conducted on November 29, 2000, the other on March 14, 2001.  (Exhibit 2 – Cooper Surgical Inspection Report).

22. The plaintiff performed the inspections of the "Delivery Tube Connector" in exactly the same manner on November 29, 2000 and March 14, 2001, and his reports of his inspections were identical.  (Exhibit 2 – Cooper Surgical Inspection Report).

23. The plaintiff was not warned, counseled or disciplined in any fashion for the manner in which he conducted the inspection of the "Delivery Tube Connector" on November 29, 2000.  Young, Tr. 135.

24. It was only after the plaintiff had complained to the director of the quality assurance department, Thomas Williams, that his supervisor, Thomas Flynn, had discriminated against him on account of his race that the defendant disciplined him for falsifying company records.  Young, Tr. 142 – 146.

25. In performing the inspection of the "Delivery Connection Tube", the plaintiff followed the defendant's written standard operating procedure as well as its custom and practice. Young, Tr. 84, 91-137, 207, 208.

26. In performing the inspection of the "Delivery Connection Tube", the plaintiff complied with the defendant's "SOP 00001", which the defendant had promulgated for the purpose of defining "the Quality Assurance inspection and testing activities in a procedural format".  (Exhibit 3, (Young Tr. Exhibit 17)).

27. "SOP 00001" specifies that "[c]omponent and finished product will be inspected and tested per instruction found in the Quality Assurance (QA) file that corresponds to the component or finished product part number."  (Exhibit 3, (Young Tr. Exhibit 17)).

28. "SOP 00001" further specifies, "[p]rior to inspection, the inspector or technician will retrieve the file folder associated with the component or finished product to be inspected. The folders are located in either a component or finished product file cabinet, ordered by numeric or alphabetic part number."  (Exhibit 3, (Young Tr. Exhibit 17)).

29. Additionally, "SOP 00001" requires, "[t]he inspector or technician will then conduct inspection and testing according to the file instructions."  (Exhibit 3, (Young Tr. Exhibit 17)).

30. "SOP 00003" was implemented by the defendant "to describe in procedural form, the necessary requirements when performing a visual and identification inspection."  (Exhibit 3, (Young Tr. Exhibit 17)).

31. "SOP 00003" specifies, "[e]ach piece in the sample will be visually inspected at 1X unless a higher magnification is required".  (Exhibit 3, (Young Tr. Exhibit 17)).

32. The plaintiff had visually inspected the part as opposed to using a "shadow graph". Young, Tr. 105.

33. The defendant's engineering drawing for the "Delivery Connection Tube" specifies

   *"threads for gripping only - visual inspection only."* (Exhibit 4, (Young Tr. Exhibit 7)).

34. It is the engineering drawing that dictates the method of inspection to be employed.

   Young, Tr. 111, 118, 125.

35. The "Employee Warning Notice" issued to the plaintiff on March 22, 2001, falsely stated

   that the plaintiff had been issued a prior "oral warning" on February 5, 2001.  The

   plaintiff had never been issued an oral warning.  The meeting the plaintiff had with

   Thomas Williams and Thomas Flynn was the result of the plaintiff's complaint to

   Williams on February 2, 2001 that Flynn had been discriminating against the plaintiff on

   account of the plaintiff's race.  "I was *not* told I was being orally or verbally

   reprimanded.  There were no memos to that fact."  Young, Tr. 147, 241, 305.  (Emphasis

   added).

36. The defendant never informed the plaintiff that he was required to perform a certain

   number of inspections each day.  Young, Tr. 102.

37. When assigned the inspection of the shipment of the "Delivery Connection Tubes", the

   plaintiff accessed the quality assurance file corresponding to the "Delivery Connection

   Tube", pursuant to the instructions contained in "SOP 00001".  Young Tr. 93.

38. When performing the inspection of the "Delivery Connection Tube" on March 14, 2001, the plaintiff discovered an inconsistency in the quality assurance file kept for the "Delivery Connection Tube".  The engineering blueprint called for a "visual" inspection of the threads, because they "for gripping only", while the incoming inspection procedure sheet required the use of a shadow graph in conducting the inspection.  (Exhibit 3 and Exhibit 5); Young, Tr. 111, 112, 113.

39. The incoming inspection procedure sheet which accompanied parts to be inspected by the plaintiff was undated and unsigned.  It was the plaintiff's job responsibility to assure that the incoming inspection procedure sheet was dated, signed and approved per FDA requirements.  Young, Tr. 114, 115.

40. The defendant's quality control protocol, which the plaintiff was obligated to follow, required that the incoming inspection procedure sheet be signed and dated.  Young, Tr. 112.  If it was not signed, the plaintiff was required to review the form, update if it needed revision, and submit it to his supervisor, Thomas Flynn, for his review and approval.  Young, Tr. 114, 115.

41. Additionally, it was the plaintiff's job responsibility to update the incoming inspection procedure sheet with the correct specifications as determined by the engineering drawings.  Young, Tr. 112 – 114.  With the correct specifications, the plaintiff was duty-

bound to submit the corrected form to his supervisor Thomas Flynn for his review and approval.  Young, Tr.  112.

42. The plaintiff followed this particular procedure on numerous occasions with other parts he had inspected when he came across incoming inspection procedure sheets that either were outdated or were not signed or dated.  Young, Tr.  115.

43. On March 14, 2001, the plaintiff prepared a revised incoming inspection requirement sheet for the "Delivery Connector Tube", matching its requirements with those found in the quality assurance file kept by the defendant on the particular part, and submitted it to his supervisor, Thomas Flynn, for his review and approval.  Young, Tr. 111 – 115, 136, 137.

44. Thomas Flynn used the revised form submitted to him by the plaintiff and wrongfully accused the plaintiff of falsifying the test results.  Young, Tr.  112, 115, 136, 137.

45. The plaintiff had followed the same procedure when he inspected a set of "Delivery Connector Tubes" on November 29, 2000.  However, the plaintiff did not submit a revised incoming inspection requirements sheet at that time because, having been in the employ of the defendant a scant two weeks, he was hesitant to take such action.  Instead he went to a senior co-worker, William Tanner, and sought his advice regarding the method of inspection he was to follow.  Tanner instructed him to visually inspect the

30

threads because it was not a critical measurement pursuant to the engineering notes in the file. Young, Tr. 134. In particular, the senior co-worker directed the plaintiff to forego using a shadow graph to take the measurements. Young, Tr. 105 – 110, 114, 119, 120, 122.

46. On February 2, 2001, the plaintiff complained to the director of the quality assurance department that the plaintiff's supervisor, Thomas Flynn, was discriminating against him on account of the plaintiff's race. Flynn had been treating the plaintiff with hostility, as compared to the treatment he accorded the two white employees, Tanner and Freese, with whom the plaintiff worked. "I complained to him about Flynn's behavior towards me. That he was not communicating with me. That he was berating me in front of other employees, yelling at me and what I believe to be intimidation because he was very rude. He wouldn't exchange pleasantries. When I would ask him a question about my job, he would, you know, respond as if I was stupid. Also I was not treated the same as the other white employees. That I was receiving disparage treatment at the hands of Flynn. And, you know, that I believed at that point it was becoming hostile because other employees, you know, they didn't seem to be as anxious to communicate with me. I just felt that, you know, that there was hostile environment being created based on Flynn's, you know, his heavy-handedness of me in front of the other employees...I told him I believe I was being

differently, disparately.  In a discriminatory fashion.  And, again, as I had mentioned his tone, his manner.  In fact, there was an instance where he yelled at me so much that spit went in my eye and I had to sort of squint or blink.  I made a defensive response because actually it was mucus from him in my face...  It was like sort of this drill sergeant and he only did this to me.  I was the only one treated this way.  I was very disappointed.  Very hurt.  And I wanted it to stop.  That's why I went -- with hesitation I went to Mr. Williams about it."  Young, Tr.  142 – 144.  "The other white employees were treated with respect and I got none from him."  Young, Tr.  151.  See also, Young, Tr.  216 – 219, 223.

47. The defendant, acting through its director, Thomas Williams, took inadequate steps to prevent Flynn from continuing his discriminatory conduct with regard to his supervision of the plaintiff.  Williams had the plaintiff communicate with Tanner when he needed assistance, however, Flynn remained the plaintiff's supervisor.  "I was given new instructions that I would report to William Tanner as my first line of contact for any questions I might have.  And that he would be responsible for any training that I might need as well."  Young, Tr.  147, 242, 243.

48. The warning issued to the plaintiff for falsifying test results was unjustified; it was completely based on false information.  Young, Tr. 105 – 137, 147, 241, 305.

49. After the defendant issued the plaintiff the warning on March 22, 2001, the plaintiff complained to the defendant's president, Nick Pichotta. Young, Tr. 138. "I brought the actual part to him and showed him what I had done, and he said to me it appears it seems someone is out to get you. He said he would look into the matter and get back to me." Young, Tr. 138.

50. Also, the plaintiff related to Pichotta the on-going discriminatory conduct to which he had been subjected by Flynn. The plaintiff informed the Pichotta that he was being subjected to racial bias. Young, Tr. 139 – 142.

51. The plaintiff requested that Pichotta investigate his complaint because he desired to have the matter handled internally as opposed to going "beyond the company to file any complaints". Young, Tr. 140.

52. Although Pichotta informed the plaintiff that he would look into the plaintiff's complaint, Pichotta never communicated with the plaintiff after March 22, 2001. Young, Tr. 139.

53. The plaintiff made the same complaint he had made to Pichotta to Joanne Augustine, the defendant's human resources manager. Young, Tr. 138, 141.

54. Contrary to the defendant's assertion, the facts supporting the plaintiff's allegations that he was subjected to discriminatory treatment involve much more than mere pleasantries and gifts of candy; the plaintiff has testified that the discriminatory treatment to which he

was subjected involved "lack of communication on the job, being singled out, treated like a pariah...I felt like I was in the back of the bus. Why? And my statement to that effect means that I was in the corner of the quality department; Mr. Flynn would make his rounds, and I would be totally ignored, okay? He would communicate with all the other employees, laugh, joke, communicate about work, or personal matters or pleasantries, whatever. And I was left in that corner, ignored, okay? So I'm not just talking only pleasantries. But if I were to go up to him with a job request to do my job, he would show contempt for me as if why I am I asking this question, as if I was stupid or something or I'm wasting time or I'm asking everybody in the department the same question." Young, Tr. 247.

55. The defendant's have misrepresented the events leading up to the plaintiff's termination. Its assertion that a conflict resolution meeting took place on April 11, 2001 between the plaintiff, a co-employee, Jeanette Freese, Joanne Augustine, Thomas Flynn and Thomas Williams, during which meeting the plaintiff lost control of his emotions, is a deception. A meeting of no longer than ten minutes took place on April 11, 2001, at which time the plaintiff was informed he had been terminated. Present at that meeting were the human resources manager, Joanne Augustine, the director of the quality assurance division, Thomas Williams, the plaintiff's supervisor, Thomas Flynn, and the plaintiff's co-worker,

Jeanette Freese.  The plaintiff was informed at the very start of the meeting by Williams that the defendant had determined that a previous disagreement between Freese and the plaintiff was the result of the plaintiff's misbehavior, and, as a result,  his employment was being terminated.  Young, Tr. 273 - 277.

***

Q. Now, who spoke first when you first go to the meeting?

A. Mr. Williams.

Q. And what did he say?

A. Basically that I was at fault with everything that had happened up to that point and that I was being terminated.

***

56. At the meeting on April 11, 2001, the plaintiff's termination was the only topic of discussion.  Conflict resolution was not attempted.  Young, Tr.  307.

57. The defendant takes the plaintiff's testimony out of context when it claims he admitted calling Thomas Flynn a liar.

***

Q.   Did you call Mr. Flynn a liar at the meeting?

MR. BUCCI:  Could we let him finish the question?

MR. CANNAVINO:  I'm sorry.  Did you finish your answer?

A.   Yes.  I stated that accusations by Mr. Flynn and Jeanette Freese were untrue, they were false.

Young, Tr.  276.

***

The plaintiff responded "yes" to the question, Did you finish your answer?  The plaintiff

responded, as follows, to the question did he call Mr. Flynn a liar, "I stated that accusations by

Mr. Flynn and Jeanette Freese were untrue, they were false.

Any dispute about this issue, is dispelled by the plaintiff's further testimony.

***

Q. Did you call Mr. Flynn a liar?

A.   I said it was untrue and false.  Those

were the words I used.

Q.   *You didn't call him a liar?*

A.   *No.*

Young, Tr.  277 (Emphasis added)

***

36

58. Prior to the meeting of April 11, 2001, the plaintiff had a meeting with Joanne Augustine, to discuss a complaint he had made against a co-employee, Jeanette Freese, and his supervisor, Thomas Flynn.  The plaintiff had been falsely accused by Freese of falsifying an inspection report.  When the plaintiff objected to the accusation, Flynn interceded and proceeded to openly berate the plaintiff.  Augustine informed the plaintiff during this meeting, which was a couple of days before the April 11, 2001 meeting that she could not substantiate his claim.  The plaintiff accepted her conclusion and returned to work.  There was no mention made of a future conflict resolution meeting or that the defendant had determined that the plaintiff was the instigator in the dispute with Freese.  Young, Tr. 269 - 273.

59. At the April 11, 2001 meeting, the plaintiff was issued a completed unemployment notice, indicating that the defendant had decided to terminate the plaintiff's employment prior to the meeting of April 11, 2001, sometime prior to the meeting.  Young, Tr. 277; (Exhibit 6).

60. After being terminated by Sikorsky Aircraft, the plaintiff made good faith attempts to find other employment.  Young, Tr.  60 - 70.

61. The plaintiff was not qualified for employment with Sikorsky because of a previous felony conviction. If the plaintiff had revealed his felony conviction on his application for employment with Sikorsky Aircraft, he would not have been hired.

THE PLAINTIFF – BASIL YOUNG


BY_____
Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Fed. Bar #ct07805
Email:thomasbucci@earthlink.net

## CERTIFICATION

I hereby certify that a copy of the foregoing *Plaintiff's Local Rule 56(b)2 Statement of Material Facts* has been sent, by First Class Mail, postage prepaid, on this 7th day of June, 2004, to:

Deborah Dehart Cannavino, Esquire
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT  06901-2501

Lori B. Alexander, Esquire
Tyler, Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT 06510

_____
Thomas W. Bucci