UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BASIL YOUNG | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : 303CV0216(MRK) |
| v. | : |
| COOPER SURGICAL, INC. | : |
| Defendant. | : JUNE 28, 2004 |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE PLAINTIFF'S MOTION TO STRIKE

I. INTRODUCTION

Defendant, CooperSurgical Inc., ("defendant"), respectfully submits this Memorandum in Opposition to the Plaintiff Basil Young's Motion to Strike Portions of the Affidavits of Thomas Williams, Joanne Augustine and Thomas Flynn Submitted by the Defendants in Support of its Motion for Summary Judgment dated June 7, 2004.

Plaintiff's motion should be denied. Contrary to the plaintiff's allegations, the statements made by these affiants are not heresay. They are not being offered for the truth of the matter asserted, but to demonstrate that statements were made, and to demonstrate the effect of these statements on the listener, i.e., the affiant.

Even so, almost all of the paragraphs plaintiff seeks to strike relate to statements made by Jeanette Freese, plaintiff's co-worker, to management as part of an internal investigation into the plaintiff's complaint, and at a conflict resolution meeting. To the extent that the court finds that these statements are offered for the truth of the matter asserted, then the defendant has submitted

a sworn Affidavit from Ms. Freese setting forth her statements in further support of its Motion for Summary Judgment. A copy of Ms. Freese's Affidavit is attached hereto as Exhibit A.

II.     FACTS

Defendant submitted the Affidavit of Joanne Augustine, the individual who handles defendant's human resources function, and who investigated plaintiff's internal complaint, in support of its Motion for Summary Judgment. In her Affidavit, Ms. Augustine testified to, among other things, her investigation, including the reasons for it and the employees interviewed (¶ 9-11), the basis for her determination that plaintiff's complaint could not be substantiated (¶12-13), and that it was he who had acted inappropriately (¶12-13), the company's actions taken in response (¶ 13) and the company's efforts to resolve the conflict (¶14).

Defendant also submitted the Affidavit of Thomas Williams, the individual who participated with Ms. Augustine in conducting the company's internal investigation into plaintiff's complaint, and who made the decision to terminate the plaintiff after the conflict resolution meeting. In his Affidavit, Mr. Williams testified to, among other things, the investigation, statements made by the employees interviewed (¶28), that plaintiff's complaint could not be substantiated (¶29), and that it was he who had acted inappropriately (¶29), the company's actions taken in response (¶ 29-30), the company's efforts to resolve the conflict (¶30), the events of the conflict resolution meeting, including the statements made by Ms. Freese and plaintiff, their respective demeanor, and the basis for his decision to terminate the plaintiff (¶ 30-32).

Mr. Flynn also submitted an Affidavit. He testified to, among other things, the events at the conflict resolution meeting, the statements he made at the meeting, as well as Ms. Freese and plaintiff's respective demeanor (¶22-24).

Ms. Augustine, Mr. Flynn and Mr. Williams also testified as to the plaintiff's attitude and demeanor at the conflict resolution meeting (Augustine, ¶21, Flynn ¶ 25, Williams ¶ 33).

By this motion, plaintiff seeks to strike paragraphs 9, 10, 11, 12, 16, 17, 18, 20 and 21 of Joanne Augustine's Affidavit dated April 12, 2004, paragraphs 22, 24, and 25 of Thomas Flynn's Affidavit dated April 8, 2004, and paragraphs 28, 29, 30 31, and 32 of Thomas William's Affidavit dated April 12, 2004 submitted in support of defendant's Motion for Summary Judgment on the grounds that they are hearsay.

Plaintiff's motion should be denied. What Ms. Freese said during the internal investigation, and at the subsequent conflict resolution meeting are not offered for the truth of the matter being asserted, but to show that the statements were made, to show the effect those statements had on the listeners, and to demonstrate that their conclusions were made in good faith for legitimate business reasons.

Plaintiff's statements at the conflict resolution meeting and, more particularly when he called his supervisor a liar, are admissions of a party opponent, and are therefore not hearsay. Alternatively, plaintiff's statements do not need to be offered for the truth of the matter, but to demonstrate the effect on the listener and to explain the reason Mr. Williams ended the conflict resolution meeting, and his basis for terminating the plaintiff. Finally, descriptions of the plaintiff's appearance and behavior sworn to under oath by Ms. Augustine, Mr. Flynn and Mr. Williams cannot possibly be hearsay.

3

II.     ARGUMENT

    A.     <u>Statements Which Are Not Offered For Their Truth Are Not Hearsay</u>

It is well settled that where the out of court statement is not offered for the truth of the matter asserted, it is not inadmissible hearsay. For instance, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Advisory Committee Note to Rule 801(c).

Similarly, statements made by one person which become known to another offered to show their effect on the listener, or their good faith, are not hearsay. Federal Practice and Procedure, Evidence, § 801 (c)( "[f]or example, a law enforcement officer explains his going to the scene of the crime by stating that he received a radio call to proceed to a given location or to explain why an investigation was undertaken, or other subsequent action was taken; such testimony is not hearsay").

Here, Ms Augustine's representations in her Affidavit concerning what was said to her by Ms. Freese and Mr. Rutowksi during Ms. Augustine's investigation of plaintiff's complaint (¶¶ 9-11) and Mr. Willliams' statements in his affidavit as to the statements made by Ms. Freese during the investigation (¶¶ 28-29) are not being offered for the truth of the matter asserted. They are being offered to demonstrate that the statements were made, and the effect those statements had on the listeners.

It simply does not matter whether the statements made by Ms. Freese and Mr. Rutkowski (the witness) during the investigation were true or not. The question is whether the defendant was motivated by legitimate business concern, or unlawful discrimination. The fact that

4

these statements were made demonstrates the defendant's legitimate business concerns were the motivating factor in its conclusion, not race. See Emich Motors Corp., v. General Motors Corp., 181 F.2d 70 (7th Cir. 1950), rev'd on other grounds, 340 U.S. 558 (holding that letters of complaint from customer offered as a reason for cancellation of franchise, to rebut allegation that the cancellation was refusal to finance sales through affiliated finance company, was not hearsay).

Even so, Ms. Freese has submitted a sworn Affidavit, attached hereto as Exhibit A, setting forth her representations during the investigation. Therefore, even if the statements made by Ms. Freese were offered for their truth, Ms. Fresse's sworn testimony is properly before the court.

Similarly, Ms. Augustine's (¶¶ 16-18), Mr. Flynn's (¶¶ 22-24) and Mr. Willliams' (¶¶ 28-29) statements in their respective Affidavits as to what Ms. Freese and the plaintiff said at the April 11, 2001 conflict resolution meeting are not hearsay. They are not being offered for their truth. They are being offered to demonstrate that the statements were made and the effect those statements had on them as the listeners. The fact that these statements were made demonstrates that the defendant's motivation in terminating the plaintiff was based upon legitimate business reasons, not unlawful discrimination.[1]

Finally, Ms. Augustine's (¶¶ 20-21) and Mr. Flynn's (¶ 25) statements of the plaintiff's demeanor at the conflict resolution meeting is not hearsay. They are the sworn testimony of these affiants of their mental impressions and opinions as to what they saw, and how the plaintiff behaved.

---

[1] Even if the statements by Ms.Freese are being offered for their truth, Ms. Freese has submitted an affidavit setting forth her sworn testimony of the statements she made at the meeting. In addition, the statements made by the plaintiff at the conflict resolution meeting are admissible as admissions by a party opponent. F.R.E. 801(2). As such, they are not hearsay. Id.

5

WHEREFORE, based upon the foregoing, defendant respectfully requests that plaintiff's Motion to Strike be denied.

THE DEFENDANT,
COOPERSURGICAL INC.

By: *[signature]*
Deborah DeHart Cannavino (CT 08144)
TYLER COOPER & ALCORN, LLP
Two Landmark Square
Stamford, CT 06901-2501
Telephone: (203)348-5555
Fax: (203) 348-3875
Cannavino@TylerCooper.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to all counsel and pro-se parties of record this 28th of June, 2004:

Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT 06604

_____
Deborah DeHart Cannavino

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BASIL YOUNG | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 303CV0216(MRK) |
| v. | : | |
| COOPERSURGICAL, INC. | : | |
| Defendant. | : | JUNE 25, 2004 |

### AFFIDAVIT OF JEANETTE FREESE

I, Jeanette Freese, being duly sworn, hereby depose and say:

1. I am over 18 years of age and believe in the obligation of an oath.

2. I have personal knowledge of the facts set forth in this affidavit, and the facts are true and accurate to the best of my knowledge and belief.

3. I have been employed by CooperSurgical since June 30, 1997. From June 30, 1997 to February, 2004, I was a Quality Assurance Inspector, reporting to Tom Flynn, Quality Assurance Supervisor.

4. On or about April 3, 2001, I had an encounter with the plaintiff, Basil Young, ("plaintiff"), another Quality Assurance Inspector.

5. I was conducting an inspection that required a measurement with the shadow graph. I do not know how to use the shadow graph for this application. I was never trained on it. Normally, I would ask Bill Tanner to assist me, but he was not in that day. I asked Chet

-1-

Rutkowski, but he was unable to assist me. I then checked the most recent inspection report and saw that plaintiff was the last person to have taken these measurements. So, I asked him to show me how to take the measurements, but he refused to respond. I then asked him again if he knew how to take the measurements, or whether Bill Tanner had done it for him.

6. Plaintiff responded, in an aggressive tone of voice, that I should see the supervisor. Then, he demanded, in an even louder and more hostile tone, to know whether I was questioning his job performance. I told him that I was not. I said I just wanted to know how to use the shadow graph to take the measurements, and since he was the last person to take the same measurements, I thought he could help me.

7. At this point, I tried to ignore him. I went to sit down. He continued yelling at me and moving closer and closer to me in an aggressive manner. He was just inches from me pointing his finger in my face. I kept saying that I was only asking for help, not accusing him of anything.

8. Fortunately, Mr. Flynn came over and placed his hand/arm between myself and the plaintiff, asking him to move away from me and told him to stop yelling. He did not. Mr. Flynn repeated his instruction. Finally, he stopped. Mr. Flynn told me to set aside the part that needed to be measured until Mr. Tanner returned.

9. I have never seen anyone react in that manner to a simple request for help.

10. Shortly thereafter, Joanne Augustine interviewed me about the incident. I explained to her what had occurred. I told her that he was the one yelling at me, as I had only asked him for help.

11. I complained that I felt verbally attacked by plaintiff in response to simply asking

him to assist me is taking a measurement using the shadow graph, as he was the last Inspector to have conducted the measurements based on the Inspection Report. I said that plaintiff was harassing me. I was afraid that, given the proximity of our work areas, it could happen again and I wondered who might be around next time. I said that I was scared.

12. On April 11, 2001, I was asked to attend a meeting with Mr. Williams, Mr. Flynn, Ms. Augustine and plaintiff.

13. During the meeting, I stated that I would not tolerate being yelled at by the plaintiff again. I stated that all I was trying to do was to ask for his help in using the shadow graph. I did not know how to use it for this application, and I saw on the sheet that he had inspected the equipment using the shadow graph. I said I did not want to be yelled at by him or anyone else, or spoken to in that manner again.

14. Plaintiff began yelling at me and stating that I was not telling the truth. He was irate, boisterous and loud during the meeting. He interrupted me numerous times throughout the meeting. Mr. Flynn told him to clam down and to stop raising his voice.

15. I remained calm and professional throughout the meeting. I explained that Chet Rutkowski <u>was</u> present, and that I never said plaintiff falsified records. I merely asked him for help because he had performed the same inspection previously, as reflected by the Inspection Report.

16. Then, plaintiff called Mr. Flynn a liar in an aggressive and hostile tone. At that point, Mr. Williams ended the meeting and excused me.

17. Because plaintiff was so irate and full of anger toward me, I felt physically threatened and feared that he might return to the workplace.

*Jeanette Freese*
Jeanette Freese

STATE OF CONNECTICUT )
COUNTY OF FAIRFIELD    )   ss: Trumbull, Connecticut

Personally appeared, Jeanette Freese, who swore to and subscribed the above affidavit before me, this 25th day of June, 2004

Notary Public/Commissioner of the Superior Court

**JOANNE AUGUSTINE**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAY 31, 2005

-4-