UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BASIL YOUNG | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:03CV0216(MRK) |
| v. | : | |
| | : | |
| COOPER SURGICAL, INC. | : | |
| | : | |
| Defendant. | : | JULY 2, 2004 |

### DEFENDANT'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7(d), defendant CooperSurgical Inc. ("CooperSurgical") hereby submits its reply brief in response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment dated June 7, 2004 ("Opposition" or "Pl. Opp."). Based upon the undisputed record in this case, summary judgment should enter for the defendant.

**I.    Plaintiff's Claim in This Case is Unlawful Termination.**

**A.    The Only Adverse Employment Action in This Case is Plaintiff's Termination.**

Plaintiff attempts to muddy the waters and in effect to "shoe-horn into this case any and all complaints [he] has had with [his employer] over the duration of his career there," see Foster-Bey v. Potter, 296 F. Supp. 2d 195, 203 (D. Conn. 2003), with complaints about a verbal warning, complaints about a written warning for falsifying an Inspection Report, and complaints about his supervisor purportedly not speaking to him on the one hand, and yelling at him on the other. Pl. Opp. at 3. In fact, the bulk of plaintiff's discussion in opposition to summary judgment does not involve the adverse employment action at all, i.e., his termination from employment on April 11, 2001. An

"adverse employment action" occurs when a plaintiff endures a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Board of Education, 202 F.3 636, 640 (2d Cir. 2000) (internal citations omitted). A material adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotation omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (quoting Crady v. Liberty National Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)).

Plaintiff has produced no evidence of any conduct toward him that would constitute an adverse employment action other than his termination. Thus, his verbal and written warning, as well as his supervisor's alleged unfriendliness toward him, are not material to the pending motion. For example, whether plaintiff disputes that he ever received a verbal warning or that there was good cause for a written warning is beside the point and should not be considered on the pending motion.[1]

### 2.    Plaintiff Was Not Terminated for Falsifying the Inspection Report but Only Received a Warning.

Plaintiff devotes most of his attention in his Opposition to his denial that he falsified an Inspection Report. However his falsification of the Inspection Report was not the event that resulted in his termination. See Pl. Opp. at 5-9, 23-26, 30-31. Thus, it is irrelevant to summary judgment whether in fact plaintiff falsified an Inspection Report on March 14, 2001. All that resulted from the

---

[1] Plaintiff seems to say these events show he was being pushed through steps of "progressive discipline." However, the incident that led to his termination was his aggressive and threatening behavior at a conflict resolution meeting on April 11, 2001. Such insubordinate behavior was grounds for immediate dismissal and did not require progressive discipline.

Inspection Report incident was a Warning, which he does not claim caused a loss of pay, suspension, or any other adverse employment action. Williams Aff. ¶¶ 22-24.[2] Plaintiff was terminated several weeks _after_ this incident based on his behavior at an April 11, 2001 meeting concerning his altercation with co-worker Jeanette Freese. He cannot raise a genuine issue of material fact on summary judgment that he was discharged because of his race by arguing -- however strenuously -- that he received an unfair warning a month earlier for falsifying an Inspection Report. Thus, his lengthy argument focusing on the Inspection Report is a red herring.

Second, even if it were relevant, plaintiff has not raised a genuine issue of material fact as to the falsification. The mish-mash of documents plaintiff has filed with his Opposition does not create a genuine issue of fact as to whether the falsification occurred.

CooperSurgical submitted admissible and probative evidence that plaintiff falsified an Inspection Report on March 14, 2001. See Exh. A to Flynn Aff. at 1. (Incoming Inspection Procedure Sheet states, "Equipment and Method" for measurement .066/.064 and .010/.015 to be taken by "shadow graph"); Williams Aff. ¶¶ 22-23 ("When questioned, plaintiff admitted that he did not use the shadow graph to take the measurements that he recorded on the Inspection Report . . . he also said . . . he did not know how to use the shadow graph . . . and measurements that small cannot be made by the naked eye."); Flynn Aff. ¶ 13 ("[When I asked him how he got measurements], plaintiff told me that he inspected and recorded measurements of the minor threading and the radius of the threading visually . . . I told him it was impossible to do. Measurements that small can only be made using the shadow graph, as specifically stated in the Incoming Inspection Procedure Sheet

_____

[2] All affidavits unless otherwise noted were filed with defendant's Appendix of Exhibits in Support Defendant's Motion for Summary Judgment dated April 12, 2004.

QC061.") In response, plaintiff does not dispute that he wrote on the CooperSurgical Inspection Report that his measurement result for the threading on part no. 35590 was ".065" (65 thousandths of an inch) and that he wrote that the radius of one thread which was supposed to be ".015/.010" (ten to fifteen thousands of an inch) was "acceptable." Exhibit B at p.4 attached to Cannavino Affidavit. He then signed and dated the Inspection Report. See i.d. He further admits that he took this measurement only visually, and did not use any sort of any magnification device. Pl. Opp. at 7. He admits that measurements as small as the ones he recorded cannot be made by the naked eye. Cannavino Aff. Exh. A, Young Dep. at 108:11-15. All the fluff aside, there is no genuine dispute that plaintiff wrote down a specific measurement that he did not take. In fact, the measurement was to the thousandths of an inch, a measurement that simply cannot be made visually without a magnification device. Cannavino Aff. Exh. A, Young Dep. at 106:23-107:6; 107:19-25. Still, plaintiff admits that he did not ask his supervisor, Mr. Flynn, about this issue before taking the measurements. Cannavino Aff. Exh. A, Young Dep. at 107:15-18. By recording specific and very precise measurements that can only be done with a shadow graph, he was stating that he made the measurements using the appropriate instrument. He did not, nor could he verify that they were accurate. This was a misrepresentation, pure and simple.[3]

Notwithstanding these undisputed facts, plaintiff claims that he did not in fact falsify the Inspection Report because he performed the inspection "visually" and wrote the word "visual" at a different place on the Report. See Flynn Aff. Exh. A at 2.

---

[3]     Plaintiff does not dispute that CooperSurgical has a policy to terminate employees immediately who falsify inspection records. Augustine Aff. ¶ 4; Augustine Aff. Exh. A; Williams Aff. ¶ 23. However, despite that policy, plaintiff was not terminated. He was given a second chance.

In evidence submitted by the plaintiff to the Court, the Quality Assurance General Inspection Procedure (SOP#00001) dictates that "[c]omponent and finished product will be inspected and tested per instruction found in the Quality Assurance (QA) file that corresponds to the component or finished product part number." Pl. Exhibit 3, at 2. The only "instruction found in the Quality Assurance file for Part No. 33590" was a document entitled "Incoming Inspection Procedure Sheet, Form QC061." Flynn Aff. ¶¶ 4-5; Cannavino Aff. Exh. A, Young Dep. at 98:11-13 ("Every part has a file, and every file, on the QC061 form, will tell you the exact instruments to use to test that particular part . . .") A true and accurate copy of the Incoming Inspection Procedure Sheet, Form QC061 from the Quality Assurance file is appended hereto as Exhibit A to Flynn Aff., appended hereto, at p.1; see also Pl. Exhibit 5. That form, for reference by the Quality Assurance Inspectors like the plaintiff, indicated that to measure the characteristic ".066/.064 - ½ - .010/.015R" the "Equipment & Method" to be used was the shadow graph. Exhibit A to Flynn Aff., appended hereto, at p.1. This fact is uncontroverted. Plaintiff himself has admitted that "every file contains a QC061 form which identifies the method of inspection, and if inspection tools are required, the tools to be used." Pl. Opp. at 6. The QC061 Form instructs that the characteristics of .066/.064 and .010/.015 are to be inspected using the "shadow graph." Exhibit A to Flynn Aff., appended hereto, at p.1. The undisputed record is clear that the shadow graph was the method to be used for visual inspections such as those plaintiff indicated he made at the level of thousandths of an inch on March 14, 2001. Under these circumstances, no reasonable juror could conclude that writing down such precise measurements, without taking them, was not a falsification.

Apparently recognizing the clarity of this analysis, plaintiff nonetheless tries to claim that at some point in time he discovered an untitled and ambiguous chart his attorney has submitted as Pl.

Exh. 4. The chart is attached without explanation. He asserts that the words "threads used for gripping only - visual inspection only" which appear on the unidentified chart somehow raise a genuine issue of fact as to whether plaintiff was terminated because of his race. It does not. The confusing chart is ambiguous and certainly was not an "instruction in the file." Moreover, the phrase "threads for gripping only - visual inspection only" does not in any respect mean that an individual could do a visual inspection and record precise numbers that were impossible to determine by visual inspection.[4]

In addition, contrary to the plaintiff's assertions, the fact that he says he performed the same inspection for the same piece on November 29, 2000 without using the shadow graph, and he was not disciplined at that time certainly does not support an inference of discrimination. There is no evidence in the record that CooperSurgical was aware of the plaintiff's prior falsification at the time, and plaintiff makes no claim that it was. Plaintiff's argument is analogous to asserting that an employer could not terminate an employee for stealing money from the cash register, if he had stolen money before but was not terminated for the prior incident because it was not discovered.

## II.    Plaintiff Has Not Presented Evidence to Give Rise to an Inference of Race Discrimination on His Prima Facie Case

As part of plaintiff's prima facie case of discrimination, he has the burden of establishing that an adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. Foster-Bey, 296 F. Supp.2d at 205. Here, plaintiff has failed to meet this burden.

---

[4] As noted in plaintiff's Exhibit 3, SOP #00003 at p.2 ¶ B, a visual inspection simply determines whether threads are marred or disfigured in some way. Plaintiff's Exhibit 3, SOP #00003. It does not mean that the Quality Assurance Inspector may write down measurements as having been taken, which were not taken (and which could not have been taken without the use of a magnification device).

6

The Second Circuit has held that "circumstances from which invidious discrimination may be inferred include preferential treatment given to employees outside of the protected class." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). However, the plaintiff in this case has not identified -- and cannot identify -- a white employee who did the same thing he did without being terminated. See Foster-Bey v. Potter, 296 F. Supp. 2d 195 (D. Conn. 2003) (sufficient evidence that supervisor may have been motivated by racial and/or age animus, where plaintiff presented admissible evidence that 39-year old Caucasian employee also violated safety procedures, but suffered no adverse employment action). Plaintiff tries to make his case by asserting that Mr. Flynn treated him differently from other employees based on other conduct, not based on the termination, such as yelling at him and (contradictorily) not speaking to him. Where a plaintiff claims he was discriminated against by being terminated based on his race, he cannot establish circumstances giving rise to an inference of a racially-motivated termination through his own conclusory testimony that his supervisor treated him differently in other ways. Part of the analysis of different treatment is whether the plaintiff was treated differently from similarly situated employees with respect to the employment action at issue. There is no legal authority -- and plaintiff offers none -- for the plaintiff to satisfy his burden of establishing a prima facie case on a claim of a racially motivated termination by offering his own testimony that he was treated in a less friendly manner than other employees with respect to other actions, not the one at issue.

## III.    Plaintiff Has Not Raised a Genuine Issue of Fact that Race was a Substantial Motivating Factor in His Discharge to Establish Pretext.

### A.    Evidence of a Racial Animus is Required.

The plaintiff has to meet a higher standard of evidence when rebutting his employer's legitimate, non-discriminatory reasons than in establishing a prima facie case. See Foster-Bey, 296

F.Supp. 2d at 209 n. 16. He has not met this higher standard in the present case.

Plaintiff seems to take the position that under the United States Supreme Court's decision in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000), a plaintiff may simply assert that his termination is without justification, disagree with his employer's observations of his performance, and thereby successfully defeat summary judgment by claiming he has raised a genuine issue of fact as to whether the employer's reasons were pretextual. In fact, that is precisely what the plaintiff has done in his Opposition: he offers his own affidavit stating that his discharge was without justification and why he believes it was without justification, and from that he argues that summary judgment must be denied.

Plaintiff's position is not reflective of the current state of the law. "[T]he Second Circuit has held, [even] after Reeves, that presenting evidence suggesting that the employer's justification is false is not necessarily enough for a Plaintiff to survive a summary judgment motion." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000). A Court faced with a motion for summary judgment may not rely solely on plaintiff's rebuttal of the employer's explanation but must "examin[e] the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff" based on a protected trait. Id. (emphasis added) (quoting Reeves, 530 U.S. at 143). Thus, even after Reeves, an employment discrimination plaintiff must still "come forward with at least some credible evidence that the actions of the individual [supervisors] were motivated by racial animus or ill-will." Grillo v. New York City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002). This is because "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent and state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

By way of example of the line of cases that have developed granting summary judgment post-Reeves, in Grillo v. New York City Transit Authority, 291 F.3d 231 (2d Cir. 2002), the Second Circuit affirmed summary judgment for an employer notwithstanding plaintiff's assertions that his employer's criticisms of his performance were unfounded. In Grillo, the plaintiff claimed that he had been demoted by his employer because of his race. Id. at 234. The employer presented as evidence in support of summary judgment performance evaluations "detail[ing] numerous examples of Grillo's shortcomings as an electrician and supervisor and conclud[ing] that Grillo did not have `the skills, knowledge, or leadership required to be a maintenance supervisor.'" Id. In his opposition to summary judgment, Grillo "hotly contest[ed] the evaluation" and presented his own testimony that the criticism was unfounded. With respect to Grillo's disagreement with his employer's version of the events, the Second Circuit noted that he "must come forward with at least some credible evidence that the actions of the individual appellees were motivated by racial animus or ill-will." Id. at 234 (citing Stern v. Trustees of Columbia Univ. In the City of New York, 131 F.3d 305, 312 (2d Cir. 1997) (emphasis added)). The Second Circuit stated,

> In support of his discrimination claims, Grillo chiefly argues (1) that the instructors subjected Grillo to disparate and unequal treatment, and conspired to deprive him of equal protection under the laws, by singling him out for punishment because of his race and speech, and (2) that appellees Wachenheim, Ingoglia, and Miller acted out of ill-will to deprive Grillo of equal protection of the laws by fabricating allegations of ineptitude to support his demotion.

Id. at 235. The Second Circuit affirmed the District Court's decision that this testimony -- much like the testimony offered by Young in the present case -- was not enough to defeat summary judgment. In effect, Grillo had "done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient." Id. at 235. The Court noted that "even if Ingoglia and Miller . . . `exaggerated or lied about [Grillo's poor performance],

9

the record does not support a finding that they did so to mask any prohibited state of mind." Id. at 235. Since Grillo's own disagreement with his employer's view of his performance was insufficient, summary judgment was appropriate.

Similarly, in the present case, plaintiff also cites to his alleged mistreatment by his supervisor's and the Human Resource Manager's purported mistreatment of him. Even if they were wrong, or even "lied" as the Grillo Court states -- which is denied by CooperSurgical – that would not be enough to support a finding that they did so to mask racism. This is particularly true in a case like the present one where the plaintiff was hired by the same actors after working with them as a temporary employee and after they clearly knew his race.

Although not an employment case, the Second Circuit's decision in Lizardo v. Denny's, Inc., 270 F.3d 92 (2d Cir. 2001), is also instructive. In Lizardo, the Court affirmed summary judgment for Denny's on a claim that several individuals were denied restaurant service because of their race. In analyzing plaintiffs' race discrimination claims under Section 1981, the Court concluded that the plaintiffs' testimony that they were treated less favorably than white patrons (since white patrons who arrived later at the restaurant were seated before they were, and since white patrons who engaged in behavior like the plaintiffs' behavior were not ejected), were not sufficient raise an inference of race discrimination. It concluded that claims of mistreatment alone were not sufficient to withstand summary judgment on the race discrimination claim, without evidence of a racial animus.

> The record is barren of any direct evidence of racial animus. Of course, direct
> evidence of discrimination is not necessary. . . . If there is sufficient circumstantial
> evidence on which to build a case, it is for the jury to determine what inferences can
> be drawn from that evidence. However, a jury cannot infer discrimination from thin
> air. Plaintiffs have done little more than cite to their mistreatment and ask the court
> to conclude that it must have been related to their race. This is not sufficient. See
> [Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998)] (explaining that anti-
> discrimination law "does not make [defendants] liable for doing stupid or even wicked

things; it makes them liable for *discriminating*").

Lizardo, 270 F.3d at 104; see also Crowley v. Courville, 76 F.3d 47, 53 (2d Cir. 1996) (stating that evidence of differential treatment without more is insufficient to establish malice or bad faith in a selective treatment claim).

**B.    There is No Probative Evidence of Racial Animus in this Case.**

In his Opposition, plaintiff attempts to rely on broad conclusory statements that he was treated differently to support an inference of race discrimination. Pl. Opp. at 22. These are insufficient. While plaintiff complains vaguely of "different treatment," he was unable in his deposition testimony to provide specific examples of how he was treated differently from other co-workers.

> Q.    Can you give me any other specific instances of where Mr. Flynn addressed you in a demeaning and degrading manner?
>
> A.    Again, on a day-to-day basis I would be ignored, treated differently, not counted as one of the other employees in the department. I just, you know, felt singled out and treated disparagingly from the other white employees.
>
> Q.    . . . Can you give me some examples of how you were treated differently?
>
> A.    Well, as I stated, he would not communicate in sheer pleasantries. If I had a question regarding the work, he would rudely respond as if I was stupid or didn't now what I was asking or talking about. I just - - You know, I felt he treated me contemptuously with just total disregard.

Cannavino Aff. Exh. A, Young Dep. 217:2-218:25.

Plaintiff's allegations, even generously construed, are merely conclusory statements not sufficiently probative to defeat summary judgment. See Shumway v. United Parcel Service, Inc, 118 F.3d 60, 63 (2d Cir. 1997). Courts in the Second Circuit have repeatedly held that a non-moving party cannot "defeat a motion for summary judgment by merely asserting conclusory allegations of discrimination." Parmleee v. Connecticut Depart. of Revenue Services, 160 F. Supp. 2d 294, 299

(D. Conn. 2001) (granting summary judgment in race, gender, age discrimination case because plaintiff did not provide evidence in support of broad allegations of discrimination); see also Newsom-Lang v. Warren Inter., Inc., 249 F.Supp.2d 292, 294-300 (S.D.N.Y. 2003) (plaintiff's own perception that she was more qualified for a promotion coupled with allegations that defendant's witnesses allegedly misrepresented details of meetings with plaintiff, are insufficient to survive motion for summary judgment). If the nonmoving party submits evidence "which is merely colorable or is not significantly probative" summary judgment should be granted. Barlow v. Connecticut, CV-1983, 2004 WL 1170629, *9 (D. Conn. May 5, 2004) (copy attached) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986)).

Citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), plaintiff indicates that he believes CooperSurgical's reason for terminating his employment was not the true reason, and for this reason summary judgment cannot be granted. Pl. Opp. at 31-32. Contrary to plaintiff's claim, even if he had submitted evidence in response to CooperSurgical's legitimate business reason (his bad behavior at the conflict resolution meeting following his altercation with Ms. Freese, and in light of his prior record of performance problems), summary judgment would still be appropriate because plaintiff has not submitted any evidence that the defendant intentionally discriminated against him for racially motivated reasons.

## C.    Reeves Does not Preclude the Grant of Summary Judgment in This Case.

In Reeves, the United States Supreme Court held that even where a plaintiff has presented of evidence both establishing a prima facie case of discrimination and supporting that the proffered explanation for the employment action was pretextual, there is no preclusion on granting summary judgment. See Reeves, 530 U.S. at 148; see also Abdu-Brisson et al. v. Delta Airlines, Inc., 239 F.

3d 456 (2d Cir. 2001) (affirming summary judgment and noting that "even if a plaintiff demonstrates a question of fact regarding the veracity of the employer's proffered justification, that does not necessarily mandate a denial of the employer's motion for summary judgment"). To defeat summary judgment, there must be evidence in the record that the employer discriminated against the plaintiff based on a protected class. See id. at 135 (summary judgment was appropriate even where there was evidence sufficient to reject employer's explanation); Slattery v. Swiss Reinsurance America, Corp., 248 F.3d 87, 93-94 (2d Cir. 2001) (affirming summary judgment because plaintiff failed to sustain burden of showing he "was treated adversely for discriminatory reasons"); Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (affirming summary judgment because age was not discussed in conjunction with termination, record contained no age-related comments or criticism, and same people hired plaintiff three years before he was fired).

Following Reeves, in ruling on a motion for summary judgment, District Courts are to apply a case-specific approach, whereby they examine the record and consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Schnabel, 232 F.3d at 90 (citing Reeves, 530 U.S. at 148-49); Bailey v. Colgate-Palmolive Co., 2003 WL 21108325 (S.D.N.Y. May, 14, 2004) (copy attached) (citing Reeves in granting summary judgment notwithstanding plaintiff's claims that reason for termination was false); Morris v. Charter One Bank, 275 F.Supp.2d 249, 260 (N.D.N.Y. 2003) (copy attached) (notwithstanding plaintiff's challenge to employee's basis for termination, summary judgment was appropriate where plaintiff had not presented evidence that age was a factor in decision to terminate his employment); Hogan v. State of Connecticut, 220 F.Supp.2d 111 (D. Conn. 2002)

(granting summary judgment notwithstanding that plaintiff had challenged validity of defendant's reason for termination).

As set forth in CooperSurgical's Memorandum, Mr. Williams made the decision to terminate plaintiff based on plaintiff's conduct at the conflict resolution meeting[5] and his record of problems over the few months that he worked as a regular employee. Memorandum at 17. Specifically, plaintiff had taken no responsibility for his actions with Ms. Freese, had previously refused to acknowledge his poor judgment in recording measurements he had not taken, had had an angry outburst during the company's attempt to improve his relationship with Ms. Freese, and had accused his supervisor and others of lying.[6] Williams Aff. ¶ 34. For purposes of summary judgment, it does not matter whether plaintiff disagreed that each of these performance problems existed. A jury does not sit as a super-personnel department to second-guess business decisions, and an employee's disagreement with his employer's assessment of his qualifications is insufficient to create a triable issue of pretext. See

---

[5] Plaintiff insists the meeting was called by Ms. Augustine to discuss his complaint about his direct supervisor, Thomas Flynn. Pl. Opp. at 2. Since Ms. Augustine and Mr. Williams called the meeting, they are the only ones who have personal knowledge of why the meeting was called. See Augustine Aff. ¶ 15; Williams Aff. ¶ 30. Plaintiff's conjecture on this issue is not probative. Moreover, it is nonsensical that a human resources manager such as Ms. Augustine would arrange a meeting with plaintiff's co-worker, Jeanette Freese, to discuss plaintiff's complaints about Mr. Flynn, his supervisor. In any case, again, this is a red herring as a dispute over the purpose of the meeting would not raise a genuine issue of material fact in this case as to whether plaintiff was terminated due to a racial animus rather than a legitimate business reason.

[6] Notwithstanding plaintiff's protest in his Opposition papers, when asked at his deposition "Did you call Mr. Flynn a liar?" plaintiff responded **"Yes. I stated that accusations by Mr. Flynn and Jeannette Freese were untrue, they were false."** Cannavino Aff. Exh. A, Young Dep. at 276. Several lines later, when asked the question again, plaintiff changed his testimony and denied using the word "liar," instead stating, "I said it was untrue and false." Cannavino Aff. Exh. A, Young Dep. at 277. Whether he used the word "liar" or just accused his supervisor and co-worker of lying using other language is irrelevant to summary judgment. Plaintiff's behavior at the meeting, including his direct challenge to his supervisor's veracity, was inappropriate and resulted in his termination.

14

Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1997) ("This court does not sit as a super-personnel department that reexamines an entity's business decisions."); Mauro v. SNET, 46 F.Supp.2d 181, 185 (D. Conn. 1999) aff'd 46 F.Supp.2d 181(2d. Cir 2000) (granting summary judgment, "the fact that [the company's ] reasoning did make sense to Mr. Mauro, does not establish that Mr. Mauro was transferred due to considerations of his age").

The record is devoid of any evidence that the defendant intentionally discriminated against plaintiff and, as discussed in more detail below, plaintiff's conclusory claims that he was discriminated against are insufficient to create a material issue of fact.

**D.     Plaintiff's Uncorroborated Statements Do Not Raise an Genuine Issue Of Material Fact.**

In his Opposition, plaintiff concedes that his claim of discrimination is "based mainly on his uncorroborated account of how he was treated by defendant." Pl. Opp. at 18. The fact is that it is based solely on such an uncorroborated account.

Plaintiff argues that his uncorroborated statements are "sufficient to raise issues of material fact precluding the entry of summary judgment." Pl. Opp. at 18. However, whether uncorroborated evidence is enough to survive summary judgment depends upon the quality and nature of the evidence itself. In his Opposition, plaintiff relies upon cases involving uncorroborated direct evidence of discrimination, i.e., disparaging remarks about the employee's protected class or other statements by a supervisor linking the protected class to the employment decision. For instance, in Holtz v. Rockefeller & Co., 258 F.3d 62, 78 (2d Cir. 2001), cited by the age discrimination plaintiff sought to rely on a remark that she herself had heard her supervisor make a comment that a co-worker "was a good employee to invest in because she was a young girl, a young woman," that "he enjoyed training young women," and that in response to plaintiff's request that he train her, "it's young

15

women that I like to teach." Id. at 77-78. Although uncorroborated, the Court reasonably found that this direct evidence of age discrimination to be admissible through the plaintiff and sufficient evidence of a discriminatory intent to defeat summary judgment. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 77-78 (2d Cir. 2001). Similarly, in the other main case cited by the plaintiff, Owens v. New York City Hous. Auth., 934 F.2d 405, 410 (2d Cir. 1991), the plaintiff offered direct evidence of age discrimination by the two decisionmakers who said her "problems had to do with her advanced age and menopause." Owens, 934 F.2d at 407, 410.

The present case is not at all like Holz or Owens. There is no direct evidence of discrimination in this case. In fact, plaintiff admits that he never heard any racial remark by any supervisor at CooperSurgical, including Mr. Flynn or Mr. Williams. Cannavino Aff. Exh. A, Young Dep. at 257:19-259:17. Where, as here, a plaintiff tries to rely on vague and uncorroborated circumstantial evidence that he was generally treated differently from other employees, and asks the Court to assume this is because of his race, they are not sufficient to deny summary judgment. See Grillo 291 F.3d at 235 (citing mistreatment and asking court to conclude that mistreatment was related to race not sufficient to withstand summary judgment); Barlow v. State of Connecticut, CV-1983, 2004 WL 1170629 at *9 (D. Conn. May 5, 2004) (copy attached) ("plaintiff's conclusory allegations that adverse employment actions she suffered at work were retaliatory in nature are not enough to withstand a summary judgment motion"); Parmalee v. Connecticut Department of Revenue Services, 160 F. Supp. 2d, 294, 299 (D. Conn. 2001) (non-moving party cannot "defeat a motion for summary judgment by merely asserting conclusory allegations of discrimination"); Bailey v. Synthes, 295 F. Supp.2d 344, 352 (S.D.N.Y. 2003) ("conjecture and speculation" are not sufficient evidence to demonstrate a genuine dispute of fact).

**IV.   Plaintiff Has Not Presented Evidence of a Causal Connection Between His Termination and a Complaint of Race Discrimination**

In cases such as the present one, temporal proximity alone is not enough to demonstrate a causal connection between the plaintiff's complaint and the adverse employment action. In Sherman v. Runyon, 235 F.3d 406 (8th Cir. 2000), the Eighth Circuit held that a two-day interval was insufficient to raise an inference of a causal connection, where the plaintiff was discharged for violating a "zero tolerance" workplace violence policy. Analyzing the facts of the case, the Court in Sherman concluded that the timing of the two incidents was insufficient to show retaliatory intent. Similarly, in Nelson v. JCPenny Co., Inc. 75 F.3d 343, 346 (8th Cir. 1996) cert. denied 519 U.S. 813 (1996), the Court held that retaliation could not be established by temporal proximity alone in light of the circumstances of that case. It stated, "In light of all of these circumstances, we cannot agree with the trial court that the mere coincidence of timing established a submissible case of retaliatory discharge."

Where, as here, an employee was terminated for an altercation with a co-worker and insubordination, the temporal proximity of a discrimination complaint and the employee's termination for the altercation cannot be controlling. See Abbondanzo v. Health Management Systems, Inc., 2001 WL 1297808 (S.D.N.Y. 2001), aff'd by 2002 WL 11174544 (2d Cir. 2002) (holding that where plaintiff was terminated for an altercation with a co-worker and insubordination, he failed to establish a casual connection between his protected activity and his termination and therefore his retaliation claim failed as a matter of law.)

In addition to the above, here plaintiff has not presented evidence that he engaged in a protected activity in the first place. He alleges that he complained to Tom Williams on February 2, 2001 that his supervisor was treating him unfairly. There is no evidence that this was a complaint of

17

race discrimination, and it was not treated as such by the employer. It was treated as a complaint by a subordinate about a conflict he was having with his supervisor. The same is true with respect to his conversations with Joanne Augustine.

Moreover, it was over a month and a half later, on March 22, 2001, that plaintiff received a Warning for falsifying the Inspection Report, an act that was a terminable offense. It was only later, after the altercation with co-worker Jeanette Freese, that plaintiff was finally terminated on April 11, 2001. Where a plaintiff engages in a terminable offense after making a complaint, yet the employer chooses not to terminate him, CooperSurgical argues that any inference of retaliation based on temporal proximity to a later discharge disappears altogether from the case. While a search of the case law reveals no cases either supporting or refuting this position, it is a matter of common sense and CooperSurgical asks the Court to adopt this reasoning in considering plaintiff's retaliation claim.[7]

**V.    Plaintiff's Potential Damages Are Limited To One Month.**

Plaintiff's claim that defendant "misstates the prevailing law regarding mitigation of damages" is simply untrue. In its brief, defendant cites numerous cases, including Second Circuit decisions, that stand for the proposition that a plaintiff in a wrongful termination case must mitigate his damages by seeking and maintaining other substantially similar employment. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47-54-55 (2d Cir. 1998) (plaintiffs in employment discrimination cases "are required to mitigate their damages") see also Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982)

---

[7] This position is further supported by the additional fact in this case that plaintiff's work performance was criticized even before he claims he made a complaint to Mr. Williams or anyone. See Lawson v. Getty Terminals Corp., 866 F.Supp. 793, 804 (S.D.N.Y. 1994) (criticisms that precede the protected activity are relevant to a finding that there was no casual connection between the termination and the protected activity).

(plaintiffs must mitigate damages by seeking and accepting alternative employment); <u>Dailey v. Societe</u>

<u>Generale,</u> 108F.3d 451, 455 (2d Cir. 1997) (requiring mitigation of damages in Title VII case).

Following the logic of these holdings, several courts have held that if a plaintiff fails is terminated

from subsequent employment, he "should be said to have voluntarily removed himself from the job

market or work place and forfeited his right to back pay." See <u>Brady v. Thurston Motor Lines,</u> 753

F.2d 1269 (4th Cir. 1985) (duty to mitigate includes obligation to <u>maintain</u> new job once accepted);

<u>Stanchfield v. Hammer Toyota, Inc.,</u> 44 Cal. Rpt. 2d 565, 568 (1995) (termination for cause

constitutes failure to mitigate damages).

In <u>Brady v. Thurston Motor Lines,</u> 753 F.2d 1269 (4th Cir. 1985), the Fourth Circuit Court

of Appeals examined a factually similar case, in which two plaintiffs, who were allegedly terminated

by the defendant in violation of Title VII, were fired by a subsequent employers. In determining that

the plaintiffs <u>were not entitled to back pay,</u> the Court concluded that the plaintiffs' terminations from

the subsequent employers constituted "voluntary terminations of employment," since the plaintiffs

had chosen to violate the employers' rules. In arriving at its decision, the Court drew an analogy to

cases in which plaintiffs voluntarily quit subsequent jobs and thus "remove themselves from the job

market". The Court further noted that:

> The reasoning for limiting back pay liability following a voluntary termination of
> interim employment is drawn from the central purpose served by the granting of back
> pay. Back pay is essentially designed as a "make whole" remedy returning the
> claimant to the financial position he would have been in had the unlawful
> discrimination not occurred . . . <u>To hold that employers are liable for losses incurred</u>
> <u>due to a claimant's unjustified, voluntary termination of interim employment renders</u>
> <u>the back pay obligation punitive, and abuses the intent of the remedy.</u>

<u>Id.</u> at 1278 (emphasis added).

The decision in <u>Brady</u> is consistent with several Second Circuit decisions, which have held that a failure <u>to maintain</u> subsequent employment constitutes a failure to mitigate damages and terminates a back pay award. <u>See</u> <u>Rivera v. Baccarat, Inc.</u>, 34 F. Supp.2d 870 (S.D.N.Y. 1999) (citing <u>Brady</u>, 753 F.2d 1269, 1277 (4th Cir. 1985) ("in order to fulfill the duty to mitigate, a plaintiff must maintain a suitable job once one has been located"); <u>Alexandru v. Northeast Utilities Service Co.</u>, 1997 WL 766885 (D. Conn. Dec. 3, 1997) (copy attached) (noting that resignation from subsequent employment may constitute failure to mitigate damages); <u>Griffin v. Buck Consulting Actuaries, Inc.</u> 566 F.Supp. 881 (S.D.N.Y. 1983) (plaintiff, who quit subsequent similar employment, failed to mitigate damages).

Plaintiff does not distinguish any of these cases presented by CooperSurgical. Instead, he simply cites to, and relies upon, <u>Johnson v. Spencer Press of Maine, Inc.</u>, 364 F.3d 368 (1st Cir. 2004), a First Circuit decision. That decision, however, is not binding on this Court. Moreover, the decision in <u>Brady</u> is consistent with other Second Circuit holdings.

As in <u>Brady</u>, in the matter at hand, the plaintiff has failed to mitigate his damages by failing to maintain substantially similar subsequent employment and, as such, has forfeited his right to either back pay or front pay. Plaintiff's assertion that "a felony conviction was a disqualifying event for employment at Sikorsky Airport" is unsupported by any evidence. The evidence in the record, including termination records from Sikorsky, clearly indicate that plaintiff was not terminated for having a felony conviction, but for "Falsification of company documents." <u>See</u> Exh. F to Appendix of Exhibits in Support of Motion for Summary Judgment.

Dated at New Haven, Connecticut this 2nd day of July, 2004.

THE DEFENDANT,
COOPERSURGICAL INC.

By: _Lori B. Alexander_

Lori B. Alexander  (CT 08970)
Deborah DeHart Cannavino (CT 08144)
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, Connecticut 06510
Tel. (203) 784-8270
Fax (203) 789-2133
Alexander@TylerCooper.com

21

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to

all counsel and pro-se parties of record this 2nd day of July, 2004:


Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT 06604

_____
Lori B. Alexander
Federal Bar No.: ct08970