# AUGUSTINE AFFIDAVIT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BASIL YOUNG | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 303CV0216(MRK) |
| v. | : | |
| | : | |
| COOPERSURGICAL, INC. | : | |
| | : | |
| Defendant. | : | JULY 1, 2004 |

## **AFFIDAVIT OF JOANNE AUGUSTINE**

I, Joanne Augustine, being duly sworn, hereby depose and say:

1.      I am over 18 years of age and believe in the obligation of an oath.

2.      I have personal knowledge of the facts set forth in this affidavit, and the facts are true and accurate to the best of my knowledge and belief.

3.      Since 1987, I have been an administrative assistant for CooperSurgical Inc. ("CooperSurgical") and my responsibilities include the human resources manager function. In that position, I have access to the company's records concerning all employee discipline and terminations. I am also personally involved in most employee disciplines and terminations. It is my responsibility to prepare the termination paperwork, including the "pink slips."

4.      On April 11, 2001, at the conclusion of the conflict resolution meeting, Mr. Williams directed me to prepare the termination paperwork for plaintiff, including the pink slip." I immediately prepared the documentation and then gave it to plaintiff.

−1−

    5.      I did not prepare the pink slip, or any of the other termination paperwork, in advance of the April 11, 2001 meeting. The purpose of that meeting was to meet as a group to try to resolve the conflict between plaintiff and Ms. Freese, so that these two employees could work together in the future cooperatively. It was not to terminate the plaintiff. The decision to terminate the plaintiff was made after Mr. Williams excused Mr. Flynn and Ms. Freese from the meeting and as a result of his behavior during that meeting.

_____
Joanne Augustine

STATE OF CONNECTICUT )
COUNTY OF FAIRFIELD    )      ss: Trumbull, Connecticut

    Personally appeared, Joanne Augustine, who swore to and subscribed the above affidavit before me, this 2nd day of July, 2004

_____
Notary Public/Commissioner of the Superior Court

Deborah A. Chandler
Notary Public
My Commission Expires
August 31, 2008

–2–

# FREES AFFIDAVIT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BASIL YOUNG | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 303CV0216(MRK) |
| v. | : | |
| | : | |
| COOPERSURGICAL, INC. | : | |
| | : | |
| Defendant. | : | JUNE 25, 2004 |

## AFFIDAVIT OF JEANETTE FREESE

I, Jeanette Freese, being duly sworn, hereby depose and say:

1.      I am over 18 years of age and believe in the obligation of an oath.

2.      I have personal knowledge of the facts set forth in this affidavit, and the facts are true and accurate to the best of my knowledge and belief.

3.      I have been employed by CooperSurgical since June 30, 1997. From June 30, 1997 to February, 2004, I was a Quality Assurance Inspector, reporting to Tom Flynn, Quality Assurance Supervisor.

4.      On or about April 3, 2001, I had an encounter with the plaintiff, Basil Young, ("plaintiff"), another Quality Assurance Inspector.

5.      I was conducting an inspection that required a measurement with the shadow graph. I do not know how to use the shadow graph for this application. I was never trained on it. Normally, I would ask Bill Tanner to assist me, but he was not in that day. I asked Chet

–1–

Rutkowski, but he was unable to assist me. I then checked the most recent inspection report and saw that plaintiff was the last person to have taken these measurements. So, I asked him to show me how to take the measurements, but he refused to respond. I then asked him again if he knew how to take the measurements, or whether Bill Tanner had done it for him.

6.     Plaintiff responded, in an aggressive tone of voice, that I should see the supervisor. Then, he demanded, in an even louder and more hostile tone, to know whether I was questioning his job performance. I told him that I was not. I said I just wanted to know how to use the shadow graph to take the measurements, and since he was the last person to take the same measurements, I thought he could help me.

7.     At this point, I tried to ignore him. I went to sit down. He continued yelling at me and moving closer and closer to me in an aggressive manner. He was just inches from me pointing his finger in my face. I kept saying that I was only asking for help, not accusing him of anything.

8.     Fortunately, Mr. Flynn came over and placed his hand/arm between myself and the plaintiff, asking him to move away from me and told him to stop yelling. He did not. Mr. Flynn repeated his instruction. Finally, he stopped. Mr. Flynn told me to set aside the part that needed to be measured until Mr. Tanner returned.

9.     I have never seen anyone react in that manner to a simple request for help.

10.     Shortly thereafter, Joanne Augustine interviewed me about the incident. I explained to her what had occurred. I told her that he was the one yelling at me, as I had only asked him for help.

11.     I complained that I felt verbally attacked by plaintiff in response to simply asking

him to assist me is taking a measurement using the shadow graph, as he was the last Inspector to have conducted the measurements based on the Inspection Report. I said that plaintiff was harassing me. I was afraid that, given the proximity of our work areas, it could happen again and I wondered who might be around next time. I said that I was scared.

12.    On April 11, 2001, I was asked to attend a meeting with Mr. Williams, Mr. Flynn, Ms. Augustine and plaintiff.

13.    During the meeting, I stated that I would not tolerate being yelled at by the plaintiff again. I stated that all I was trying to do was to ask for his help in using the shadow graph. I did not know how to use it for this application, and I saw on the sheet that he had inspected the equipment using the shadow graph. I said I did not want to be yelled at by him or anyone else, or spoken to in that manner again.

14.    Plaintiff began yelling at me and stating that I was not telling the truth. He was irate, boisterous and loud during the meeting. He interrupted me numerous times throughout the meeting. Mr. Flynn told him to clam down and to stop raising his voice.

15.    I remained calm and professional throughout the meeting. I explained that Chet Rutkowski was present, and that I never said plaintiff falsified records. I merely asked him for help because he had performed the same inspection previously, as reflected by the Inspection Report.

16.    Then, plaintiff called Mr. Flynn a liar in an aggressive and hostile tone. At that point, Mr. Williams ended the meeting and excused me.

−3−

17.    Because plaintiff was so irate and full of anger toward me, I felt physically threatened and feared that he might return to the workplace.


*Jeanette Freese*
Jeanette Freese

STATE OF CONNECTICUT  )
COUNTY OF FAIRFIELD      )          ss: Trumbull, Connecticut

Personally appeared, Jeanette Freese, who swore to and subscribed the above affidavit before me, this 25th day of June, 2004

*Joanne Augustine*
Notary Public/Commissioner of the Superior Court

**JOANNE AUGUSTINE**
***NOTARY PUBLIC***
**MY COMMISSION EXPIRES MAY 31, 2005**

—4—

# FLYNN AFFIDAVIT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BASIL YOUNG | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 303CV0216(MRK) |
| v. | : | |
| | : | |
| COOPERSURGICAL, INC. | : | |
| | : | |
| Defendant. | : | JULY 2, 2004 |

### AFFIDAVIT OF THOMAS FLYNN

I, Thomas Flynn, having been duly sworn, do hereby depose and say:

1.     I am over the age of 18 and I understand the obligations of an oath.

2.     I base this Affidavit on personal knowledge.

3.     Since approximately June, 2000,  I have been the Quality Assurance Supervisor for CooperSurgical, Inc. ("CooperSurgical"). As the Quality Assurance Supervisor,  all of the Quality Assurance Inspectors report to me and I  am responsible for supervising their work performance.  The Quality Assurance department ensures compliance with all regulatory agencies and regulations as well as ensuring that CooperSurgical's medical devices meet our high quality standards.

4.     The Quality Assurance General Inspection Procedure (SOP#00001) dictates that "[c]omponent and finished product will be inspected and tested per instruction found in the Quality Assurance (QA) file that corresponds to the component or finished product part number."

–1–

The only instruction found in the Quality Assurance file for Part No. 33590 was the "Incoming Inspection Procedure Sheet, Form QC061." A true and complete copy of the file for Part No. 33590 at the time plaintiff did his inspection is attached hereto as Exhibit A.

  5.  The QC061 is the document that dictates the instructions for completing an inspection. It identifies the characteristics to be inspected and the equipment, if any, required to perform the inspection.

               _____
               Thomas Flynn

STATE OF CONNECTICUT )
COUNTY OF FAIRFIELD  )   ss: Trumbull, Connecticut

  Personally appeared, Thomas Flynn, who swore to and subscribed the above affidavit before me, this 2nd day of July, 2004

          _____
        Notary Public/Commissioner of the Superior Court

          **JOANNE AUGUSTINE**
           *NOTARY PUBLIC*
        MY COMMISSION EXPIRES MAY 31, 2005

# EXHIBIT A

# CooperSurgical

## INCOMING INSPECTION PROCEDURE SHEET

PART NAME: _Delivery Tube Conn._

PART NUMBER: _33590_

1) See comments for possible special instructions. before proceeding.

2) Select a sample using the C.O. sampling plan 1.5 associated A.Q.L.

3) Inspect all dimensions on the first piece.  If any deviations are found, the correlating dimension is to be included in the inspection of the 1.5 sample lot; if not already a part of the existing dimensions to be inspected.

4) Inspect the sample lot --

    A) Using red lined drawings inspect all circled dimensions.
    B) If red lined drawings are not available, use the following procedure:
        1. Inspect all dimensions with tolerances of ± .005 or less.
        2. Inspect all threads and depth of threads.
        3. Inspect all angles 1° or less.
        4. Inspect all surfaces with #16 or less.
        5. Inspect all holes and locations.
        6. Inspect all dimensions accompanied with an asterisk.

| CHARACTERISTIC | EQUIPMENT & METHOD |
|---|---|
| .066/.064 – 1/2 – .010/.015R | Shadow graph. |
| .072 x .054 | Vernier & pin gauge |
| 2.000 | Vernier |
|  | Do not use thread gauge. Special meter |
|  |  |
|  |  |
|  |  |
|  |  |

APPROVED _____    _____

# COOPER SURGICAL
## INSPECTION REPORT

Part Name: Delivery Cuvd Tube   Part Number: 33590   Vendor: OFFLOAD MFG

ACC = ACCEPTABLE, NG = NON-CONFORMING, NA or - = NON-APPLICABLE, * = SEE NOTE BELOW

| | | | | |
|---|---|---|---|---|
| DATE RECEIVED | 16 DEC 98 | 3/3/99 | | |
| RECEIPT NO. & LI. | 7381-1 | 9096-1 | | |
| P.O. NUMBER | 22353 | 23240 | | |
| WORKORDER NUMBER | 5639 | 6916 | | |
| QTY. RECEIVED | 30 | 100 | | |
| QTY. STOCKED / FILE# | 30 / 13807 | 100 / 16536 | | |
| QTY. DEFECTIVE | 0 | 0 | | |
| QTY. RETURNED / NCMR# | N/A / N/A | N/A / N/A | | |
| QTY. SCRAPPED / FILE# | N/A / N/A | N/A / N/A | | |
| .060/.064 MIN THD | .0645 | .0645 | | |
| 2.000 ±.010 | 2.008 | 2.00 | | |
| 1/2 | .509 | .500 | | |
| .010/.015 | Acc | Acc. | | |
| .072 × .054 | .0715 × .053 | .072 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TYPE OF INSPECTION PERFORMED | Vis Dim | Visual & Dim | | |
| SAMPLE SIZE | 5 | 5 | | |
| INSPECTOR | | | | |
| DATE INSPECTED | 12/18/98 | | | |
| BLUEPRINT REV. | C | | | |

OMNIFORM - 073

PAGE __ of __                    QC FORM # 073  1/98

Incoming Inspection Report

PART NAME _DEL. CONN. TUBE_     PART NO. _33590_     VENDOR _OFFLAND_

LIST OF INSPECTIONS PERFORMED AND DISPOSITION

A - ACCEPT, AM - ACCEPT & MEDIATE, P - PLANT REWORK, R - RETURN, S - SCRAP

| | | | | | | |
|---|---|---|---|---|---|---|
| DATE RECEIVED | 1-12-94 | 1-2-94 | 1-26-94 | 4/1/94 | 12-27-95 | 030659 |
| CONTROL NUMBER | 021702 | 022090 | 022039 | 223925 | 033001 | 033247 |
| P.O. NUMBER | 9246 | 9246 | 9247 | 9247 | 11115 | |
| QUANTITY RECEIVED | 18 | 18 | 21 | 24 | 25 | |
| QUANTITY STOCKED | 0 | 18 | 21 | 24 | 25 | |
| QUANTITY DEFECTIVE | 18 | 0 | 0 | 0 | 0 | |
| QUANTITY RETURNED | 18 | 0 | 0 | | 0 | |
| QUANTITY SCRAPPED | 0 | 0 | 0 | | 0 | |
| 1-72 NF Thd. | | tapping only | tapping only | tapping only | tapping only | |
| .056 .054 MINOR Thd. | .072 .062 | .0647 .0642 | .0658 .0642 | .0657 | .064 | |
| 2.000 ±.010 | 2.0130 1.9935 | 2.0330 2.0155 | 2.0300 2.0265 | 1.865 2.003 | 1.993 2.002 | |
| 1/2 | .521 | .502 .493 | .5035 .487 | .5162 | .505 | |
| .015 .010 R | .006 x 34° CHAMP | .003 x 35° Champ. | .004 x 34°, 34° | .0043 x 30° 15' | .0069 SP 31° .072 x.053 | |
| .072 x .054 Tbo | OK | OK | OK | OK | OK | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| CERT RECEIVED | | | | | | |
| INTO PASSIVATION | | | | | | |
| OUT OF PASSIVATION | | | | | | |
| TYPE OF INSPECTION PERFORMED | VER | U+D | U+D | LAB | U+D | |
| SAMPLE SIZE | | | | 8 | 9 | |
| INSPECTOR | | | | | | |
| DATE INSPECTED | 1-12-94 | 1-27-94 | 1-27-94 | | 2-27-9? | |
| BLUEPRINT REV. | | | | | | |



1-72 NF THD.
.066
.064 MINOR THD.

VIEW B

.015
.010 R (AFTER THREADING)

⌖ A .002

2.000

±.010

-A-

2

B

NOTE:

4—BREAK ALL SHARP EDGES .005 MAX.
3—TUBE I.D. TO BE FREE OF FOREIGN MATERIAL.
2—THREADS FOR GRIPPING ONLY—VISUAL INSPECTION ONLY.
1—USE 15 GA. SS HYPO TUBE .072x.054 (SEAMLESS)
        FRIGI P/N. 20121

| UNLESS OTHERWISE SPECIFIED DIMENSIONS ARE IN INCHES | MATERIAL: M.F. FRIGI PN 20121 | FINISH: COMMERCIAL |
|---|---|---|
| FRAC. ± 1/64 | | |
| XX ± .01 | PART NUMBER | |
| XXX ± .005 | | |
| ANGLE ± 1/2 DEG. | VENDOR INFORMATION | |

CONFIDENTIAL AND PROPRIETARY
The information is the property of CooperSurgical, is to
understood in strict confidence and is not to be disclosed
or utilized without written permission.

| DRAFTSMAN K.HICKS | DATE 8.14.89 |
| PROJ. ENGR. MZ | 9.21.89 |
| MFG ENGR | |
| Q.C. | |
| APPROVED RMC | 9.20.89 |

CooperSurgical
15 FOREST PARKWAY    (203) 929-6321 PHONE
SHELTON, CT 06484    (203) 925-0135 FAX

DESCRIPTION: DELIVERY CONNECTION TUBE

PART NUMBER: 33590

SIZE: A    SHEET 1 OF 1

RMC

NONE    REV.:

# COOPERSURGICAL INSPECTION REPORT

PART NAME _Delivery Connector Tube_  PART NUMBER _33590_   VENDOR _Offload MF_

| | | | | |
|---|---|---|---|---|
| DATE RECEIVED | 11-29-00 | 3-14-01 | | |
| RECEIVER # | 22015 | 24491 | | |
| LINE ITEM # | 6 | 3, 4, 5 | | |
| PURCHASE ORDER # | 30305 | 30305 | | |
| WORK ORDER # | N/A | N/A | | |
| QUANTITY RECEIVED | 15 | 35 | | |
| QUANTITY TESTING SCRAP | 0 | 0 | | |
| QUANTITY NON-CONFORMING | 0 | 0 | | |
| QUANTITY RELEASED | 15 | 35 | | |
| QC RELEASE FILE # | 783481 | 870851 | | |
| TESTING SCRAP FILE # | N/A | N/A | | |
| QC DISPOSITION FILE # | N/A | N/A | | |
| NCMR # | N/A | N/A | | |
| INSPECTION | RESULTS (AVERAGED AS APPLIES) / EQUIPMENT ID # | | | |
| VISUAL | 0/8 | 0/8 | | |
| .066/.064 MIN THD | .065 | .065 | | |
| 2.000 ± .010 | 2.000 | 2.000 | | |
| 1/2 | .500 | .500 | | |
| .010/.015 | ACC. | ACC. | | |
| .072 x .054 | .0715 x .053 | .0715 x .053 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| SAMPLE SIZE | 8 | 8 | | |
| INSPECTOR | BY | B. Young | | |
| DATE INSPECTED | 11-29-00 | 3-14-01 | | |
| DRAWING REVISION | C | C | | |

QC073 8/0

## INCOMING INSPECTION REQUIREMENTS

ART NAME: _Delivery Connector Tube_          PART NUMBER  | 3 | 3 | 5 | 9 | C |  |  |  |  |

REMARKS: _____

APPROVED SUPPLIER(S):

_OFFLOAD MANUFACTURING_

_____

_____

\* READ ALL PRINT COMMENTS

SAMPLE PLAN: ANSI/ASQC Z1.4-1993          AQL LEVEL: 1.5 SINGLE, NORMAL

INSPECTION LEVEL: _____          REFERENCE: QC SOP # 00004

| TEST | SPECIFICATION | EQUIPMENT |
|------|---------------|-----------|
| VISUAL | Q.C. SPEC. #00003 | 1 X |
| DIMENSIONAL | DRAWING # 33590 | VERNIER CALIPER |
|  | Q.C. SPEC. #00007 |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

PROVED: _____          DATE: _____          QCO61-6/99

Exhibit B

33590

ذمرؤ5